CASE 107—ACTION BY THE ASSIGNEE FOR A SETTLEMENT OF THE AS-
SIGNED ESTATE.—MARCH 6.

# Hoffman v. Anderson, &c.

APPEAL FROM CAMPBELL CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS, ANDERSON AND PHILLIPS UPON CROSS PE-
TITION FILED AGAINST THEM BY HOFFMAN AND HOFFMAN AP-
PEALS.  REVERSED.

PRINCIPAL AND AGENT—MAKING OF BILL OF EXCHANGE BY AGENT IN
HIS OWN NAME—RELEASE OF AGENT BY ELECTION TO PROCEED
AGAINST PRINCIPAL—SUBROGATION.

Held:  Where the holder of a bill of exchange, upon discovering
that A., the maker, had acted as agent, or for the accommoda-
tion, of Y. in executing the bill, presented the paper as a claim
against the insolvent estate of Y., and received a dividend there-
on, there was not such an election on his part to look to the undis-
closed principal as precludes him from looking to A. for the
balance due, as he sought merely by presenting his claim against
the estate of Y. to be subrogated to the rights of A. against that
estate.

HARVEY MYERS AND MYERS & HOWARD, FOR APPELLANT.

Thos. B. Youtsey was cashier of the First National Bank of
Newport, Ky., appellee Phillips was a clerk in the bank and
appellee Anderson was a friend if not a business associate of
Youtsey.  Both of them were assisting Youtsey in floating pa-
per secured by collateral in the shape of stock of the bank.
Each of them executed his separate note payable to themselves,
respectively, and sold the notes to brokers in Cincinnati, the
notes having attached to them the collateral above mentioned.

Appellant, Hoffman, purchased both the notes; while he was
the owner of the notes and before their maturity, said bank made
a most disastrous failure and the stock became worthless.

Appellant learned after the crash, and after he became the
owner of the notes, that the makers of them, Anderson and
Phillips, appellees, were really acting as accommodation mak-
ers or brokers for Youtsey, and said Anderson and Phillips fail-
ing to make proof of their claim against Youtsey's estate, the ap-
pellant did so, and asked that he be subrogated to whatever claim

they had against Youtsey, and on his own petition was made a party to the suit to settle the estate of Youtsey.  The settlement case progressed and Hoffman received dividends in a small amount upon the claim.  Anderson and Phillips answered the cross petition of Hoffman, setting up that they were acting merely as the agents of Youtsey, and that by reason of that fact they were relieved of liability upon the notes.  Hoffman demurred to these answers and the demurrer raised the issue of law which was decided by the lower court in favor of Anderson and Phillips, and which is the only question now presented to this court for review.

Our contention is, that Anderson and Phillips were not agents of Youtsey but were accommodation makers merely and being such they are unquestionably bound upon their contract and under the proof Youtsey is also bound.  It is simply a case in which Hoffman was entitled to avail himself of the equitable doctrine of subrogation to the extent of the claim Anderson and Phillips had against the estate of Youtsey and nothing more.

### AUTHORITIES CITED.

Am. & Eng Ency. of Law, p. 335; 336; Citing Jefferson County v. Burlington, &c. R. R. Co., 66 Iowa, 385; Singer v. Dickneite, 51 Mo. App., 249; Byles on Bills, 131-413; Daniel on Neg. Instruments, sec. 189; 2 Randolph on Com. Paper, sec. 472; Carpenter v. Republic Nat. Bank, 106 Pa. St., 170; Citing British N. A. Bank v. Ellis, 6 Sawyer, (U. S.) 96; Devareaux v. Phillips, 97; Mich., 104; Am. & Eng. Ency. of Law (vol. 1) p. 360; citing Clay v. Johnson, 6 T. B. Mon., 649; Smith v. Bacon, 3 J. J. Mar., 312; Hunt v. Armstrong, 5 B. Monroe, 399; 4 A. & E. Ency. of Law, 299; Gano v. Fennell, 13 B. Mon., 390; 1 Am. & Eng. of Law, p. 374; Johnson v. Way, 27 Ohio St., 374; Tod v. Wich., 36 Ohio St., 392; Murray v. Lardner, 69 U. S., 110; Cromwell v. Sac County, 96 U. S., 51; McKesson v. Starberry, 3 Ohio St., 156; Davis v. Bartlett, 12 Ohio St., 534; Bassett v. Avery, 15 Ohio St., 299; Ketchen v. Lauderback, 48 Ohio St., 177.

WRIGHT & ANDERSON, ATTORNEYS FOR APPELLEES.

The record, in this case, shows that no questions of fact are in issue.

The notes sued on were executed and delivered by Phillips and Anderson in their own names, as apparent principals, but in fact, as agents of the undisclosed principal, Youtsey.

Before the maturity of the notes, Hoffman learned the true nature of the transaction, and after their maturity he elect-

ed to proceed against the principal. He pleads that Phillips and Anderson declined to proceed upon their claims against Youtsey, but they both deny this and Hoffman fails to prove his allegation.

We insist that Hoffman having elected to proceed against Youtsey instead of Phillips and Anderson, because he supposed Youtsey's estate was good and the others doubtful, he can not now turn back and hold the agents liable. He seeks to convert a several liability into a joint liability, but our courts have said he can not do this. Jones, Assignee v. Johnson, 86 Ky., 530.

OPINION OF THE COURT BY JUDGE GUFFY—REVERSING.

Thomas B. Youtsey was cashier of the First National Bank of Newport, the appellee Phillips was a clerk in the bank, and appellee Anderson was a friend of said Youtsey. Both of them were assisting Youtsey in floating papers secured by collateral in the shape of stock of said bank. Each of them executed his separate note, payable to himself, respectively, and sold the notes to brokers in Cincinnati, Ohio, the notes having attached to them the collaterals aforesaid. The appellant, Hoffman, purchased both of the notes. While he was the owner of the notes, and before their maturity, the bank failed, and the stock became worthless. It is claimed that appellant learned after the failure, and after he became the owner of the notes, that the makers of them were really acting as accommodation makers or brokers for Youtsey, and, appellees failing to make proof of their claim against Youtsey's estate, Youtsey having in the meantime made an assignment for the benefit of creditors, the appellant filed his claim, and asked to be subrogated to whatever claim appellees had against Youtsey, and on his petition was made a party to the suit to settle the estate of Youtsey. The appellees answered the cross petition of Hoffman, alleging they were acting merely as agents of Youtsey, and that by reason thereof they were relieved

from liability on the notes. Hoffman demurred to these an-swers, which raised the issue of law that was decided by the lower court in favor of Phillips and Anderson, and, after the issues were fully made up and proof taken, the court dismissed appellant's petition as to Anderson and Phillips, both claims being consolidated and heard together.

It is the contention of appellant that appellees occupied the position simply of accommodation makers of this paper; that they were acting for the accommodation of Youtsey; and that Youtsey received all of the benefit accruing from their issuance of the paper, but that such is the case in thousands of instances, and the mere fact that an accommo-dation maker does not receive any of the benefits of the paper executed does not relieve him from liability. It is not charged that Phillips and Anderson acted as agents of Youtsey, but it is charged that they executed and discounted the notes for the benefit of Youtsey for his accommodation. It is further contended for appellant that there was no agency on the part of Youtsey to appellees to sign his name to the notes, and they did not pretend to execute the notes in the name of Youtsey. It is contended that, appellees be-ing accommodation makers, they are bound on their con-tract, and, under the proof that Youtsey is also bound, that appellant was entitled to avail himself of the equitable doc-trine of subrogation to the claim Phillips and Anderson had against the estate of Youtsey, and nothing more. It is fur-ther contended for appellant that appellees could not be released from their liability to him on account of anything he did in seeking to collect the claim off Youtsey, unless such action had in some way prejudiced appellees, which, it is contended, has not been done in this case.

It is contended for appellees that before the notes ma-tured the appellant learned the true nature of the transac-

tion, and after their maturity he elected to proceed against the principal. It is also contended that the reply of appellant does not deny the agency of appellees, nor that he knew all of the facts at the time he made his election to look to the principal. The appellees cite and rely upon the case of Jones v. Johnson, 86 Ky., 530, (9 R., 789), (6 S. W., 582). So much of the opinion in the case supra as affects the question under consideration refers to the cross petition of Emory's Sons asserted against the bank. It was contended that the bank was liable to them for $20,000, the money having been obtained from them by Dorn, cashier of the bank, for the benefit of the bank. The money was loaned on notes of Dorn with the stock of the bank pledged as collateral, and without any knowledge at the time that the money borrowed was for the bank. The court, after considering the facts in the case, said: "It is argued, however, that the cross plaintiffs, Emory's Sons had, after a full knowledge of the transaction, elected to proceed against Dorn or his estate, for the payment of their debt, and are now precluded from looking to the bank (the unknown principal) at the time the loan of the money was made to Dorn and the stock of the bank pledged. The cross action of Emory's Sons was pending against the bank when they presented Dorn's notes to his administrator in the settlement of Dorn's estate. Dorn had died, and, the action being pending for a distribution of the assets of his estate between his creditors, the notes were presented and proven as claims, and the *pro rata* of a few cents on the dollar paid to, and received by, Emory's Sons. The bank had filed the notes executed by Dorn for the stock pledged to Emory's Sons as claims against Dorn's estate, and the commissioner reporting that the stock was not in fact purchased by Dorn, but to raise money for the

bank, the latter, or its assignee, withdrew the notes without prejudice to any claim that might thereafter be asserted. That Dorn was liable to Emory's Sons is evident, and that the bank was also liable after the discovery that it was the real principal is also plain. It was not, however, a joint liability, and Emory's Sons, after being in possession of all the facts, could abandon the right to claim against the bank, and look alone to Dorn. The contract was either with the principal, so far as Emory's Sons were concerned, or with the agent and both could not be made liable in a joint action. Dorn's estate was insolvent, and known to be such by the creditors, when the claim of Emory's Sons was presented. The bank was also known to be insolvent, and the assets of both combined insufficient to pay Emory's Sons' debt. The actions to settle the affairs of the bank and Dorn's estate were in chancery, and pending in the same court with the cross action of Emory's Sons pending in the bank case to make the bank liable. It is now insisted that the filing of the notes in the Dorn suit and collecting the *pro rata* was a conclusive election on the part of Emory's Sons to look to Dorn's estate for the money, and not to the bank. If such facts constitute in law an election, then the judgment below dismissing the claim of Emory's Sons was proper; but if the question is one of fact, by which the intent of the creditor to make an election is to be determined, then there was no such election as precluded Emory's Sons from looking to the bank for payment. That the plaintiffs in the cross petition had elected to sue the bank, and were prosecuting the claim, when it was filed in the case against Dorn's estate, against the bank, and continued to prosecute it, is conceded. The assets from Dorn's estate scarcely paid the cost of presenting the claim in order to obtain the *pro rata*, and under such circumstances it would be unreasonable to hold that it was

an election to abandon the action against the principal, and look alone to the agent. Story, in his work on agency, says that while the creditor has his election to sue either a distinct and separate action, the creditor is not precluded by such an election from maintaining another action against the party not sued, unless he has in the first action obtained a complete satisfaction of his claim. Story on Ag., sec. 295. While the doctrine, in its broad statement, is not sustained by the weight of authorities, the general rule as laid down by Wharton is sustained by nearly all the authorities, and that is: 'In order to relieve the principal, there must be something equivalent to an election not to charge the principal, and whether there is such an election is a question of fact, which is not determined by charging the agent after knowledge of the principal.' Whart. Ag., sec. 472. The English rule is that, after the agent has been sued to judgment, the right to resort to the principal is lost.' Priestly v. Fernie, 3 Hurl. & C., 977. We think the undoubted rule is that if when the creditor discovers the principal, and, with a full knowledge of the circumstances connected with the transaction, he then gives the sole credit to the agent, or proceeds to judgment against him, it is equivalent to an election to abandon all , claim against the principal. That such facts may exist as would preclude the creditor, as a matter of law, from proceeding against the principal, is not doubted. As in the case given, when the creditor, with a full knowledge of all the facts, should elect to sue the agent to judgment, nothing else appearing, the law would say that it was an election to look to the one sued, and an abandonment of all claim against the other. In the case of Curtis v. Williamson, L. R., 10 Q. B., 57, where the goods were purchased in the name of Bowlton, without disclosing his agency, the fact of the agency having been subse-

quently discovered, the creditor, Bowlton, having filed a peti-
tion for the liquidation of his estate, inclosed his claim, to
be filed for payment, properly proven. His attorneys, fear-
ing that it might prejudice the claim against the principal,
telegraphed to the commissioner not to file the affidavit, but,
the dispatch not being received in time, the claim was filed,
but no money paid on it. After this was done, proceedings
were commenced against the principal, and the defense was
that the creditor had elected to proceed against the agent.
The court held that it was no bar; 'that the creditor had
the right within a reasonable time to elect to proceed against
the principal; and unless, in the meantime, with full knowl-
edge as to who were the principals and with the full power
of choosing between them and the agent, they had distinctly
and unquestionably elected to treat the agent alone as their
debtor,' his right to proceed against the principal had not
been lost. The court further said: 'In general, the question
of election can only be properly dealt with as a question of
fact for the jury, subject to the direction of the presiding
judge.' In Priestly v. Fernie, above, where the party had
sued the agent and obtained judgment, nothing else appear-
ing, it was held that no action could be maintained against
the principal. In Calder v. Dobell, L. R. 6 C. P., 486, the
creditor had taken the note of the agent, where the name of
the principal had been disclosed, and it was held that the
parol circumstances under which the contract was made
were admissible, and the taking of the note from the agent
did not necessarily amount to an election on the part of the
plaintiffs to give credit to the agent only. In Paige v.
Stone, 10 Metc. (Mass), 160, 43 Am. Dec., 420, it was held
that the taking of the note of the agent alone, under knowl-
edge of the circumstances, was a discharge of the principal.
In Calder v. Dobell, parol evidence was admitted to explain

Hoffman v. Anderson, &c.

the circumstances under which the note was taken, and the only question raised in that case was as to the admissibility of that character of testimony when attempting to charge the principal. No such question was raised or made in the case of Paige v. Stone, that case having been decided on the want of authority by the agent to execute negotiable paper for the principal. The doctrine laid down in that case is, however, the correct rule. If the creditor, with a knowledge of the facts and the liability of the principal, saw proper to take the note of the agent, the principal is released. The creditor may give the exclusive credit to the one or the other, and in doing so, with a knowledge of all the facts, he must look to the one to whom he has given the credit. In Raymond v. Proprietors, 2 Metc. (Mass.) 319, the creditor proceeded in the lower court against both the principal and agent, and when it reached the supreme court the writ or proceeding was dismissed as to the agent. The principal there argued that, as the creditor had continued to charge the agent after he knew the liability of the principal, it was an election to look to the agent; but the court held that the creditor might have erroneously supposed that he could charge both at the same time in the same action, and it was clearly open to any reasonable explanation consistent with the purpose of relying on the liability of the principal at all times after their liability was discovered; that it was one of those cases where the party, intending to retain all his legal rights, was yet uncertain upon whom the legal responsibility might be fixed, etc. In the case before us an election had been made, and an action progressing, in which the creditors were seeking to make the principal liable, and the mere fact of the claim and allowance to them in the distribution of the assets of the insolvent cashier was not an abandonment of the action against the bank. It would be unreason-

able to hold, as a matter of law, under such a state of facts as exists in this case, that the right to pursue the principal was lost, and that Emory's Sons intended to look alone to Dorn's estate for their money. The judgment below is therefore affirmed, except as to the complaint of Emory's Sons on their cross petition. They are the creditors of the bank, and its assets and stock must pay their debt. Some of the stock was sold or transferred prior to the bringing of this cross action. Other stockholders have their discharge in bankruptcy, and the names or number of stockholders required to contribute, if the assets on hand are not sufficient, is not ascertained by this opinion. The amount received by Emory's Sons from the sale of the stock and from Dorn's estate must be credited on their claim. The case is remanded on the cross petition of Emory's Sons for proceedings consistent with this opinion. Thompson v. Davenport, 9 Barn. & C., 78; Society v. Underwood, 9 Bush, 609, 15 Am. Rep., 731; Dunn's Adm'r. v. Kyle's Ex'r., 14 Bush, 134."

It will be seen from the petition of appellant that, after setting out the note executed by appellee Anderson, of date the 21st of November, 1896, it is further alleged that Anderson had no property subject to execution, and it is also alleged that the stock of the First National Bank pledged as collateral was of no value. It is further alleged that appellee Anderson executed, indorsed, and delivered said note for the accommodation, benefit, and behoof of said Youtsey, who received the entire proceeds thereof, and though Anderson is to that extent a creditor of the estate of Youtsey, he declined to make claim against Youtsey for the amount of said claim, and the petitioner prays to be subrogated to all the rights of the said Anderson as a creditor of the said Youtsey, to the extent of the amount of said notes and interest; that defendants Samuel E. Anderson and T. B.

Youtsey are required to answer herein, and say whether or not said note was executed for the benefit of said Youtsey, and say, further, who received the proceeds thereof; and he prays for judgment against the defendants Anderson and Youtsey for $4,500, with interest from the 21st day of February, 1897, until paid, and that he be paid his *pro rata* proportion of the estate of the assigned estate of T. B. Youtsey; and prays for his costs and all just and proper relief. A similar petition was filed against appellee Phillips. The answer of Phillips denies that he declined to make claim against Youtsey for the amount of said note. It is further alleged, in substance, that in the execution and delivery of the note he was in fact not a principal party, but was the agent of Youtsey only; that it is true, as stated by Hoffman, that he (Phillips) executed, indorsed, and delivered said note for the accommodation, benefit, and behoof of said Youtsey, who received all the money for his own use and benefit. It is further alleged that on the — day of January, 1897, and before the maturity of said note, and before the filing and proving of the same in this case by appellant as a claim against Youtsey and against his estate, Hoffman was fully informed in the premises, and knew that defendant, in the execution, etc., of said note, acted for or on account of said Youtsey, and for his accommodation, benefit etc., and that this defendant was in said matter the agent of said Youtsey only, and, being so informed and so knowing, he (Hoffman), elected to file said note as a claim against Youtsey and his estate; that with a full knowledge of all of said facts he prosecuted this claim in the case so that judgment against Youtsey in his favor was duly rendered for the full amount of said note, with interest; and that while so knowing he received from the estate of the said Youtsey in this case the sum of $137.05 as and for a partial dividend;.

wherefore defendant says that plaintiff has and ought to have no cause of action against him upon said note or in any manner set up. The answer of appellee Anderson presents substantially a similar defense to that of Phillips. The appellant demurred to the aforesaid answers, and, without waiving same, filed a reply in which it is denied that at the time of the execution or delivery of said notes mentioned in his pleadings he knew either Phillips or Anderson was acting as agent for said Youtsey, that he had no knowledge or information upon that subject at that time, and did not learn the facts until the failure of the First National Bank of Newport. He says that investigation and inquiry at that time developed the facts stated in his former pleadings herein. He says that he purchased said notes in the regular course of business in the market at Cincinnati, Ohio, for a good and valuable consideration, then and there paid by him, to wit, the full face value of said notes, less the discount; that they were so purchased by him before their maturity; and that, under the laws of the State of Ohio in force then, said bills and notes had the effect of bills of exchange, and were in fact bills of exchange, and were not subject to equitable defenses. The court, as before stated, dismissed appellant's claim as against Anderson and Phillips, and from that judgment this appeal is prosecuted.

That the claims sued upon by the appellant are bills of exchange seems to be admitted, and is undoubtedly true, whether admitted or not. It will be observed that appellant claims that he was only seeking to be subrogated to the rights of the appellees as against Youtsey, so far as the prosecution of his claim against Youtsey is concerned. It is clear, under the proof in this case, that, if appellees had been compelled to pay appellant the debt sued on, they would have been entitled to recover the same from Youtsey;

hence it seems to us that the mere fact that Hoffman was seeking to be subrogated to their rights against Youtsey can not be held to be an election to look alone to Youtsey for the payment of the debt in question.

We deem it unnecessary to determine whether appellees were technically what is understood as agents for Youtsey, or whether they should be held to be the obligors in the accommodation paper issued for the sole benefit of Youtsey.

We do not understand the decision in Jones v. Johnson to settle this case for appellees, though it appears from the decision that Emory's Sons, after a full knowledge of the transaction had with Dorn, elected to proceed against Dorn or his estate for payment of the debt, and it was insisted that therefore, they were precluded from looking to the bank, the unknown principal at the time loan of money was made to Dorn and the bank stock pledged. It will be seen, from examination of the case supra, that a suit was pending in the same court in equity to settle the affairs of the bank, and also one to settle the estate of Dorn, and that Emory's Sons had filed their claim against Dorn's estate, and also sought to recover from, or, in other words, also filed their claim against the bank, and the bank insisted that presentation and filing of the claim against Dorn's estate, and receiving a *pro rata* therefrom, precluded a recovery against it, and the circuit court so decided; but this court reversed the judgment, and held that the prosecution of the claim against Dorn's estate did not bar Emory's Sons' right to recover against the bank. It is therefore manifest that the case supra supports the contention of appellant rather than that of appellees. After a careful consideration of this case, we are of opinion that the prosecution of the claim of appellant against Youtsey constitues no defense upon the

part of appellees. Any sum collected by appellant from Youtsey or his. estate should be credited upon the claim sued on, and a judgment entered against the appellees for the residue.

Judgment reversed, and cause remanded for proceedings consistent herewith.

Petition for rehearing by appellee overruled.