# Moore et al. v. Spicer et al.

(Decided May 30, 1933.)

B. M. LEE for appellants.

C. B. SPICER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Mary Stuart Moore was the owner of 10 shares, and her husband, H. R. Moore, was the owner of 15 shares, of the capital stock of Modern Motors, Inc. H. R. Moore's stock had been pledged to his wife as collateral security for a loan of $1,500. On January 27, 1930, Moore and wife, as parties of the first part, and C. B. Spicer, as party of the second part, entered into a written contract by which the Moores sold, and Spicer bought, the 25 shares of stock at the price of $2,500, to be paid on January 30, 1930. After the contract was signed, and in accordance with the understanding of the parties, the Moores went to the First State Bank of Harlan, and directed the assistant cashier to deliver the

stock to Spicer on payment of the contract price on January 30, 1930.

Spicer having refused to take and pay for the stock, the Moores brought this action to recover the purchase price and interest, and asked that, if Spicer failed to pay the purchase price, they be adjudged a lien on the stock, and that it be sold and the proceeds applied on the debt, interest and costs. Spicer interposed a general demurrer, and, without waiving same, filed an answer denying in the first paragraph the allegations of the petition and pleading in the second paragraph that at the time the contract was made he advised the Moores that he was acting only as agent for Dr. W. M. Martin and Dr. H. K. Buttermore, and that he was purchasing the stock for them and they would pay the purchase price; that, after the contract was made, the Moores recognized the liability of Martin and Buttermore as principals, and elected to proceed against them under the contract; that thereafter the Moores and Martin and Buttermore modified the contract by an agreement by which Martin and Buttermore were to pay $1,000 in cash, and execute a note for $1,500, payable 60 days after date; and that the Moores thereafter abandoned the contract and refused to deliver the stock to Martin and Buttermore in consideration that H. R. Moore be employed by the Modern Motors, Inc., and should receive a salary as such employee. The affirmative allegations of the answer were denied by a reply. Later on the Moores filed an amended petition seeking a recovery against Martin and Buttermore, who interposed substantially the same defense. On final hearing judgment was rendered in favor of the defendants, and the Moores have appealed.

According to the Moores, Spicer bought the stock and said nothing about acting as agent for Drs. Martin and Buttermore. The stock was left at the bank in accordance with the agreement, and was not taken up and paid for. Being informed of this fact, Mrs. Moore took the stock to the office of Spicer, who told her he had not taken up the stock because he had been unable to secure the money. In the month of March following, H. R. Moore went to the office of C. B. Spicer, where he met Drs. Martin and Buttermore, who proposed as a compromise of the claim that they would pay $1,000 in cash and execute a note for $1,500. Moore told them that he

would be willing to settle the matter on that basis if he found out that the note could be cashed at the bank. He then met his wife, and they went together to the First State Bank and then to the Harlan National Bank to see if the note could be cashed, and were told that they had no money to pay out on the note.

On the other hand, Spicer deposed that he told the Moores that he was buying the stock for Drs. Martin and Buttermore, and that they would take up and pay for the stock when they returned, which would be in a few days. After that, he arranged a meeting between the Moores and the doctors. At that meeting the Moores agreed to take a note for $1,500 and $1,000 in cash. The Moores then left for the purpose of getting a blank note and the stock certificates, but did not return. Spicer is corroborated by the doctors, and also by others who were present. Their evidence makes it plain that the note was to be negotiable, although they claimed it was to go through the First State Bank and not through the Citizens' Bank. They say that the Moores left for the purpose of going to the First State Bank to see if it would take the note, but did not come back.

To make out their defense it was necessary for the purchasers of the stock to show that the claim was compromised by a valid agreement, and that this agreement was abandoned by the Moores. In view of the fact that there was no dispute as to the liability of the purchasers or the amount of their liability, it may be doubted if there was any consideration for the alleged compromise agreement by which the Moores, who were entitled to $2,500 cash, agreed to accept $1,000 cash and a negotiable note for $1,500, on which, in case of nonpayment and protest, they would have been liable to the bank negotiating the note; but, passing this phase of the case, it is clear that the compromise agreement was not valid for another reason. It is admitted that the purchasers were to give a $1,500 negotiable note, which was to be negotiated at the First State Bank. They made no effort to show that the First State Bank would have advanced the money on the note. On the contrary, the evidence of the Moores that they went to that bank and it notified them that it would not discount the note is uncontradicted. In the circumstances, one of the conditions of the alleged compromise agreement is wholly lacking, and the agreement never became effective for

any purpose. That being true, there was no agreement to abandon, and the defense was not made out.

Here the contract was in writing, and was adopted by the parties as the final and complete expression of the agreement. Spicer signed the agreement in his own name, and there was nothing on its face to indicate that he was acting as agent for the two doctors, or any one else. In the circumstances, the contract was integrated, Restatement of Law of Contracts, sec. 228, and he cannot escape liability by showing by extrinsic evidence that he disclosed his agency and mentioned the name of his principals at the time the contract was executed. Miller v. Early, 58 S. W. 789, 22 Ky. Law Rep. 825; 21 R. C. L. 896; Nash v. Towne, 5 Wall. 689, 18 L. Ed. 527; Restatement of Law of Agency, 546.

The mere fact that the Moores entered into a negotiation with the alleged principals for the purpose of adjusting the matter did not operate as an election on their part to look to the principals alone. Nor did the fact that, after suing Spicer, the agent, they afterwards filed an amended petition against the principals, operate as an election to look to the principals alone. Jones v. Johnson, 86 Ky. 530, 6 S. W. 582, 9 Ky. Law Rep. 789; Hoffman v. Anderson, 112 Ky. 893, 67 S. W. 49, 24 Ky. Law Rep. 44. However, they cannot recover against both, and may be required to make an election.

Finally, it is insisted that this is a suit for specific performance which could not be maintained except under special circumstances, which were not shown to exist. Here the price of the stock was agreed upon, the date of payment was fixed, the stock was delivered to the bank, and nothing remained to be done by the sellers except to receive the purchase price. In the circumstances the contract was executed, and, the buyer having declined to accept and pay for the property, the sellers had the right to retain the property for the buyer and sue him for the price, or sell it and recover the difference between the contract price and the price obtained on the resale, or keep the property as their own and recover the difference between the market value and the contract price. Lam v. White, 204 Ky. 557, 264 S. W. 1113. Here the Moores adopted the first method, and there can be no doubt that they could recover the contract price and have the stock sold and the proceeds applied on the judgment.

468

It follows from what has been said that the court erred in rendering judgment in favor of the defendants.

On the return of the case, the court will require the Moores to elect whether they will proceed against Spicer, the agent, or the principals, Martin and Buttermore, and on their election will render judgment in their favor.

Judgment reversed and cause remanded for proceedings consistent with this opinion.