## Smith v. Smith.

(Decided Oct. 16, 1934.)

L. J. MAY for appellant.

STRATTON & STEPHENSON, P. B. STRATTON and E. J. PICKLESIMER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Maxie Smith brought this suit against her husband, Will M. Smith, to recover alimony. Pending the action she was allowed temporary alimony in the sum of $50 a month, and at the time of the hearing there was due on this allowance the sum of $300. On final hearing the court awarded her permanent alimony in the sum of $5,000, and rendered judgment in her favor for $5,300 and costs, including attorneys' fees of $600. Thereafter execution issued on the judgment, and was levied on a tract of land which appellee purchased at the sale, and for which she obtained a deed from the sheriff.

Later on she made a motion for a writ of possession, which was sustained. Mr. Smith appeals from the order allowing permanent alimony, and also from the order awarding the writ of possession, and from the order allowing only $5,000 as permanent alimony, and fixing the allowance of her attorneys at $600, appellee has prosecuted a cross-appeal.

The record is voluminous, and it would serve no good purpose to state the respective contentions of the parties or to review at length the evidence bearing on their relations prior and subsequent to their marriage. It is sufficient to say that after a careful consideration of the entire record we have concluded, as did the chancellor, that appellee made out a case of abandonment and cruel and inhuman treatment, and that appellant failed to substantiate the ground relied on to defeat her claim for alimony.

Appellant demurred to the notice of the motion for the writ of possession, and insists that the notice was insufficient. Section 1689, Kentucky Statutes, provides that the notice referred to therein "shall be, in substance, as follows:

"A B to C D, notice:

"You are hereby notified that I will, on the ........ day of ........, 189...., enter a motion on the docket of the ...... circuit court for a judgment for the possession of certain lands situated in said county, and state of Kentucky, which lands are described as follows, viz.: [description], being the same lands bought by me at a sale duly held under execution which issued from the office of the clerk of ...... court in favor of ......, plaintiff, vs. ......., defendant. [See execution book A, Execution No. ......] ......, A B."

The notice in question is as follows:

"Maxie Smith, Plaintiff, vs. Will M. Smith,
Defendant.

"Notice.

"The defendant, Will M. Smith, is hereby notified that the plaintiff, Maxie Smith, will on the 9th day of January, 1933, enter a motion on the docket of the Pike Circuit Court, for a judgment for possession of certain lands situated in Pike County, Kentucky, which lands are described as follows, viz:

"A certain tract or parcel of land lying and being on the Tug Fork, of the Big Sandy River beginning at a water birch, about 14 inches in diameter in the edge of the river about 350 feet above the Burnwell Bridge pier; thence leaving the river, and running up the hill S 19-30 E. a distance of approximately 6250 feet to a stake; on top of the bridge; on the back line of the said Will M. Smith farm; thence with the meanders of the ridge following the Smith line between the waters of the Blackberry Fork and Stafford Branch to Tug River; thence up said river with its meanders to the beginning, being the same land bought by Maxie Smith under a sale, duly held under execution which issued from the office of the Pike Circuit Court Clerk, in favor of Maxie Smith, plaintiff, vs. Will M. Smith, defendant, on the 17th day of October, 1932, for the sum of $5,300.00 with interest from the 15th day of July, 1932, and until paid and for the further sum of $712.80 cost.

"Given under my hand this the 24th day of December, 1932."

It will be observed that the notice contains every requirement of the statute, with the exception of the execution book and execution number mentioned in the parenthesis. As the notice specified that the sale was had under an execution which issued from the office of the Pike circuit court clerk, and gave the name of the action and the party in whose favor the execution was issued, as well as the date of its issue, there can be no doubt that the notice was sufficient to apprise appellant of the particular execution under which the sale was had, notwithstanding the fact that neither the execution book nor the number of the execution was given. We therefore conclude that the demurrer to the notice was properly overruled.

But the point is made for the first time in this court that the property sold was incumbered by a mortgage, and that under section 1691, Kentucky Statutes, and the ruling in Whitaker v. Holcomb, 210 Ky. 836, 276 S. W. 973, appellee acquired only a lien on the property purchased, and was not entitled to a writ of possession. In this connection it is argued that the record in the alimony case, which was made part of the record on the motion for a writ of possession, discloses that the property was mortgaged. If the question had been raised

in the lower court, and it had developed that there was an unreleased mortgage, appellee as purchaser would have had the right to attack the mortgage and show that it was void, or had been discharged. Atkins v. Emison, 10 Bush, 9. If the question could be raised for the first time in this court on the mere suggestion that somewhere in his evidence in the alimony action appellant stated that the property was mortgaged, it would deprive. appellee. of that right. We therefore hold that the question cannot be raised for the first time in this court.

On the cross-appeal it is insisted that appellee should have been allowed alimony in the sum of $50,000, and attorneys' fees of $2,000. While it is true that appellant owns considerable property in one form or another, it is also true that much of the property is incumbered, and that he is otherwise indebted. We find that when appellee was on the stand she introduced in evidence an antenuptial contract reciting that appellant was old and infirm, that she had been advised of the nature and extent of his estate, and that it was agreed that she should have out of his estate the sum of $5,000, that it should be optional with appellant whether he should pay her any more, and that the contract was made for the purpose of having a definite understanding and agreement, and to settle forever any financial differences. The contract also contained the following provision:

> "The party of the second part [appellee] signs this contract for the purpose of, and does hereby waive dower, alimony or separate maintenance, and against which this contract shall be a bar."

Not only does the contract recite, but appellee testified, that she was informed by appellant that he had a large estate, and there is no contention that the contract was obtained by fraud. Thus it will be seen that the chancellor fixed the permanent alimony at the sum agreed on by the parties in lieu of dower, alimony, and separate maintenance, and in view of the relations of the parties, the great difference in their ages, and the fact that she was not altogether without fault, we are not prepared to say that appellee should have been allowed more than she agreed to accept, and expected to receive, when the marriage was consummated.

It is true that the record is large, and that counsel

for appellee performed considerable work in the preparation of the case; but, considering these elements in connection with the result of their labors, we are not persuaded that the allowance of $600 for their services is too small.

Wherefore, the judgment is affirmed on both the original and cross appeal.