## McCormack v. Moore.

(Decided May 27, 1938.)

CHARLES B. SPICER for appellant.

B. M. LEE for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee, Mary Stuart Moore, recovered a judgment in the Harlan circuit court against Dr. H. K. Buttermore and Dr. W. M. Martin for the sum of $2293.83, interest and costs. See case of Moore v. Spicer, 249 Ky. 464, 61 S. W. (2d) 5. Execution was issued thereon and it was levied on 19 pieces of real estate as the property of Dr. Buttermore to which he held either complete or part title. It later turned out, after the inauguration of the instant proceedings, that Dr. Buttermore owned only an undivided interest in some of the parcels of property levied on, and also that some of them were encumbered with either a vendor's lien or a mortgage. All of the property was sold by the sheriff on the 6th day of November, 1933, when appellee became the purchaser thereof at the then amount of her judgment. The price bid was not equal to two-thirds of the appraised value of the property and nothing was done beyond reporting the sale until after the expiration of more than twelve months from its date. On October 8, 1935, pursuant to notice theretofore given, Mrs. Moore, as authorized by the provisions of section 1689 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, entered motion in the Harlan circuit court for a writ of possession of the property bought by her at her execution sale, to which Dr. Buttermore responded on October 29, of the same year, in which he set out the extent of his interest in each parcel of property involved, naming the other joint-owners, one being his wife—and also averred the fact of the existence of liens upon named parcels of the property which were created prior to the levy of appellee's execution, and which were likewise alive at the time of the sale of the sheriff made thereunder.

All of such liens so pointed out by him were upon separate or individual pieces of the property. Among the liens he named was one held by his sister, the appellant herein, M. B. McCormack, to whom he had executed a mortgage in April, 1933 on all of the 19 pieces of property involved for the ostensible purpose of se-

curing an alleged indebtedness he owed her in the amount of $25,000.00. She at that time, and at all other times throughout her life so far as this record discloses, was a non-resident of the state, having been born in Pennsylvania and later moved after her marriage to Tampa, Florida, and from thence to Lakeland, Florida, where she was residing at the time of the mortgage and during the period of this litigation. Her husband died in 1932 and her father's death preceded considerably that of her husband. She, after her husband's death, continued the business he was conducting before then, which was a wholesale dealer in automobile parts.

Following pleadings, extending to sur-rejoinders, developed the issues that were tried and disposed of by the judgment appealed from, and which are the only two presented by this appeal. They are: (1) The validity and effectiveness of the $25,000.00 mortgage given by Dr. Buttermore to his sister, the appellant, M. B. McCormack, and (2) whether or not a certain judgment, hereinafter referred to, constituted a legal bar to appellee's right to insist upon and have adjudged to her a superior lien to that of Mrs. McCormack because of the bogus nature of the latter's mortgage which Mrs. Moore charged was without consideration, and was made and given for the fraudulent purpose and design of cheating and hindering the creditors of Dr. Buttermore and especially herself.

The litigation in which the pleaded judgment was interposed in bar of appellee's rights supra, had been inaugurated sometime prior to the instant one, which was commenced by appellee's motion for possession referred to. The style of that litigation—which was pending in the same court—was Commonwealth Life Insurance Company v. F. D. Perkins et al., the purpose of which was to foreclose a mortgage lien on one of the pieces of property levied on and sold under appellee's execution (designated as parcel No. 1) which was a four story brick business building in the city of Harlan, Kentucky. The mortgage had originally been given by one Perkins; but at the time of the levying of the execution Buttermore had acquired an interest therein, subject, however, to the mortgage of the insurance company. That action will hereinafter be referred to as the "Perkins case."

Following the giving of the mortgage one Cole ac-

quired a one-half interest in the same store building and during the pendency of the Perkins case he (Cole) filed a separate action in the same court against the owners of the other one-half for a sale of the property for distribution of its proceeds after satisfying the prior Perkins mortgage to the insurance company, and it will be hereinafter referred to as the "Cole case." It was later consolidated with the Perkins case, when some sort of arrangement was made whereby a local building and loan association, operating in Harlan, acquired the insurance company's debt, and from what happened thereafter it is inferable that the building and loan association agreed to extend the time and let the case rest, since nothing was done thereafter, though the two actions remained on the docket.

The record with reference to those cases was in that condition when the motion for possession herein was made, which was after the issues—including the attack upon appellant's mortgage—were also made. Both appellant and appellee were parties defendant in the Perkins case, and appellant in her pleadings in that case, setting up her mortgage, made it a cross petition against Dr. Buttermore. Perhaps also it was made a cross petition against appellee; and the latter's pleadings in the Perkins case were practically of the same nature. However, no affirmative relief was asked in appellant's pleadings in that cause against Mrs. Moore, except she did state therein that her mortgage was superior to the one acquired by appellee through the levy of her execution. Such was the condition of the pleadings in the consolidated Perkins and Cole cases, as well as the condition of the pleadings in the instant proceedings, on September 1, 1936. On that day counsel for Mrs. McCormack and Dr. Buttermore prepared and filed a somewhat anamolous judgment in the two consolidated actions, the substance of which was to simply and only declare and adjudge the fact of the existence of appellant's mortgage and that it was a superior lien to that of appellee, which she obtained by the levy of her execution and the sale thereunder. That judgment is the one pleaded in the instant action in bar of appellee's rights herein attempted to be asserted.

In response to that plea appellee's counsel denied its validity and asserted that it was fraudulently procured and entered, and especially so in that the theretofore promulgated and published rules of the Harlan

circuit court had been grossly violated in its obtention, and which rules we declared in the case of Coombs Land Company v. Lanier, 222 Ky. 139, 300 S. W. 328, to be valid and enforceable. Appellee's counsel, therefore, asked that it be cancelled or ignored and set aside. Responsive pleadings made the issues on that contention—thus forming the issues to be tried in the instant case. Proof was thereafter taken by appellee only, and it consisted mainly in depositions as upon cross examination of appellant, and that of her brother, Dr. Buttermore. The proceedings in the meantime were consolidated with the prior consolidated Perkins and Cole cases, and which was done on motion of appellee and to which appellant objected.

Upon submission of the three consolidated cases and proceedings the trial court, on May 13, 1937, rendered the instant judgment upon the two issues supra between appellant and appellee. It adjudged that the mortgage of Mrs. McCormack was a fraudulent one, without consideration, bogus and void, and it also denied the validity of the judgment of date Sept. 1, 1936, and refused to give to it estoppel effect. On the contrary, the court expressly set it aside and held it for naught. It then ordered the enforcement of appellee's lien and directed the sale of the property bought by her at her execution sale, or enough of it to satisfy her debt, interest and cost; and from that judgment appellant only appeals.

Before discussing the merits relative to the two issues involved and pointed out supra, some contention with reference to preliminary matters should be briefly referred to. Chief among them is the contention by counsel for appellant that inasmuch as Mrs. Moore obtained only a lien for her debt, resulting from her purchase under her execution sale, this proceeding inaugurated by her was and is wholly unfounded and totally without support, and for which reason it should have been dismissed. That contention, of course, is made and argued upon the ground that an execution purchaser of encumbered property acquires only a lien thereon and is not entitled to its possession, since the lien may be enforced only as other liens are enforced. But in making that argument counsel either overlooked or intentionally ignored section 1691 of our statutes, which expressly provides that if the property levied on was held by the defendant in the execution under only

an equitable title, or if it be real property and it is encumbered by a lien, then the court shall, at the instance of the purchaser, "subject the land to the payment of the debt of the execution creditor in the same manner it would do if there was a return of no property found, and may cause such pleadings to be filed and parties brought before the court as may be necessary to a final equitable judgment in respect to the rights of all parties interested." Cases cited in the notes to that section construing, and applying it in accordance with its language, are Mt. Sterling National Bank v. Duffy, 145 Ky. 67, 140 S. W. 60; Whitaker v. Holcomb, 210 Ky. 836, 276 S. W. 973, and Smith v. Smith, 255 Ky. 703, 75 S. W. (2d) 351. But without such adjudications the inserted language of the section is too plain for controversy, and the apparently earnest argument of counsel in support of his contention fails to convince us that we should ignore the language of the section and uphold his arguments against appellee's right to maintain the procedure she employed. Additional arguments made in brief of appellant's counsel, other than those directed to the two issues supra, are equally if not more fallacious and immaterial, so much so that we do not feel inclined to devote either space or time in discussing them, and which brings us to a consideration of the two decisive issues supra, which will be disposed of in the order named.

1. In the recent case of Gillardi v. Henry, 272 Ky. 188, 113 S. W. (2d) 1158, there was presented for our consideration a like issue to that of the first one in this case. It, like its instant companion (this case) involved only a question of fact. In disposing of it in the Gillardi Case, after reciting the testimony bearing upon the issue of fact, we said (page 1160): "The case presents exclusively one of fact, and we are firmly convinced that the testimony introduced before the trial court portrays as glaring a case of fraud as any record ever filed in this court." That statement was perhaps true when written, but it is doubtful if it would have been made had we seen this record first, for we are persuaded that in a contest between the two in the respects mentioned this record most likely would obtain "first prize." It is unnecessary for us to refer to or discuss collateral issues argued by respective counsel with respect to burden of proof, badges of fraud, and other relevant ones recognized by the law for the ascertain-

ment of fraud. The chief witnesses relied on by appellee in this case are the immediate parties to the attacked mortgage, and no discerning or fair-minded individual can read their testimony and come to any other conclusion than that the mortgage was executed for the sole purpose of defeating all of the creditors of the fraudulent mortgagor (Dr. Buttermore) who did not have their rights, as his creditors, nailed down with recorded liens from which there was no escape.

Both of those witnesses at the time they testified possessed remarkably faulty memories, and they each displayed a gross degree of neglect in recording or otherwise confirming any of the transactions composing appellant's alleged debt to secure which the mortgage was ostensibly given. According to them it began nearly thirty years ago when appellant, as a school teacher, saved and accumulated about $800.00 all of which she willingly turned over to her brother for his education—taking from him no kind of obligation evidencing such an advancement, nor making any entry upon any sort of record of that fact.

No other indebtedness could be mentioned by either of them until the doctor's education was completed and it became necessary for him to attend medical college. About that time appellant's father died and she inherited from his estate $2100.00, which she says she also paid in its entirety to her brother. In 1932 appellant's husband died and she collected the proceeds of a life insurance policy he carried amounting to $5000.00. She put that money in a box deposited in a bank in her home town and delivered all of it to her brother's wife in kind, thus avoiding the trouble of depositing the amount in a bank and then writing an evidencing check to her brother as payee. She claims that her brother would occasionally execute to her a note but she named no dates or amounts, nor was any note preserved, although she stated that when the mortgage was given no note for the aggregate amount was taken. She says she began teaching school when she was 16 years of age, receiving a salary of $55 per month. She had four sisters, living in the family, none of whom contributed anything to her brother's education, and that she gave to her father her earnings to be devoted to her brother's education up to the amount of $800.00 in all, and which was some 25 or 30 years before she took her mortgage.

In the meantime her brother acquired a considerable practice in his profession in his chosen locality in and around Harlan, Kentucky, and became interested in a number of corporations in some of which he was an officer, and in one coal mining company he was its president. He was the elected and standing physician for three coal companies by virtue of which he was the exclusive doctor for all of their employees, and received a stated fee for each visit to all patients. He held stock in other corporations besides mining companies, and was considered to be and was a wealthy man in his community throughout all that period; the record showing that he handled—through banks and otherwise—large amounts of money. When pressed for the reason for taking the mortgage at the time it was given after such a long delayed period, appellant answered: "Just to relieve the situation, I could help him and keep it in the family,"—the latter part of the answer being no doubt the truth.

We could consume pages in recitation of portions of appellant's testimony but the more we would repeat the less convincing it would become. On the contrary, it is of the same type and nature as that given by everyone who is striving to deceive and to cover up such bogus transactions. Throughout the entire period of the alleged borrowings in this case the various transactions composing the total alleged amount of it were made and done, according to the testimony of brother and sister, in such a loose and unnatural fashion as to be totally non-convincing that they ever occurred. On the contrary, because of their wide departures from ordinary methods employed in bona fide transactions the conviction is irresistable none of them ever happened, and which the trial court so found. The testimony of Dr. Buttermore is even less convincing than that of his sister. If there were any doubt of the sufficiency of the testimony given by appellant to support the judgment appealed from, then that doubt is entirely removed when the testimony of Dr. Buttermore is read. He produced no check from his sister to him or note by him to her for any part of the $25,000.00 although she lived at a distance from him of several hundred miles, and none of the transactions occurred at his home, and he infrequently visited her because of the demand on his time as an active practicing physician in his community.

The arrangement whereby the mortgage was so belatedly executed appears to have been made by appellant's counsel—as well as counsel for Dr. Buttermore —and which relationship to the latter has been of long standing, as will be gleaned from the case of Moore v. Spicer, supra. The mortgage was not recorded for some six months or more after it was executed, although it was in the possession of the attorney of Dr. Buttermore during that time—it having been so deposited by appellant—or, perhaps, that period elapsed before any delivery of the mortgage was made to appellant after it was prepared, dated and executed. The date of its indicated execution was just 27 days before the rendition of our opinion in the Moore v. Spicer Case supra, and perhaps, Dr. Buttermore or his counsel, in some manner, divined the approach of the storm and concluded to take shelter. At any rate, it was done, but the court in this case determined that the appropriated shelter was insufficient to afford protection and which we are most thoroughly convinced was and is correct.

2. The storm center of the argument with reference to issue (2) supra—i. e., the effectiveness of the judgment of date September 1, 1936, as creating a res adjudicata estoppel—relates to the nature and character of that judgment as well as the character of the attack made upon it by counsel for appellee. Appellant's counsel argues that the attack herein made is a collateral one and cannot be sustained, unless the judgment relied upon was and is void; whilst attorney for appellees insists that the judgment was void for several reasons, among which is (a) that the rules of the Harlan circuit court were not followed in its procurement, and (b) that no such affirmative relief—as between the litigants to the instant controversy—as therein declared was prayed for or asked, nor had there been any submission of the issue therein determined or any other issue in the then consolidated cause composed only of the Perkins and Cole cases wherein the judgment was entered. We are convinced that the record sustains the *facts* upon which appellee's counsel bases such contention; but, whether or not they, though true, had the effect to render the judgment void or to affect it more than to render it erroneous, is, to say the least of it, exceedingly doubtful. However, we find it unnecessary to determine that question, since we are convinced that

the judgment relied on—even tnough it was regularly rendered in every respect—was only an interlocutory one and never became final so as to prevent the court from cancelling, ignoring, or setting it aside at any time before final judgment in the litigation.

It is a firmly settled rule prevailing in this jurisdiction—and of such long standing as to require the citation of no authorities or cases in support of it—that an interlocutory judgment, or one that is not final, may be ignored or set aside by the same court rendering it at any future term of the court or stage of the case, and that the determination that is made in the final judgment of the cause is the permanent one until set aside or reversed in the manner prescribed by law. We have determined in innumerable cases—as is stated on page 1158, volume 5 of Caldwell's Kentucky Judicial Dictionary—that: ''A 'final order' or judgment in a civil action, from which an appeal will lie, is one which either terminates the action itself or operates to divest a right in such manner that the court making the order does not have power after the expiration of the term to put the parties in their original condition. Com. v. American Express Co., 167 Ky. 685, 181 S. W. 353, Ann. Cas. 1916E, 875; Tackett v. Cooper, 182 Ky. 390, 206 S. W. 603; Kentucky Heating Co. v. City of Louisville, 178 Ky. 424, 427, 198 S. W. 1150.'' A great number of supporting cases are listed on that and the next (1159) page of that volume, as is also done on page 1365, and following ones, in volume 2 of the same publication. Some of them are, Elkhorn Land & Improvement Co. v. Ratliff, 181 Ky. 603, 205 S. W. 687; Davie v. Allen's Ex'r, 198 Ky. 669, 249 S. W. 1013; Autry v. Autry, 191 Ky. 42, 229 S. W. 79; Williams v. Howard, 192 Ky. 356, 233 S. W. 753; Cooper v. Williamson, 198 Ky. 62, 65, 248 S. W. 245; Green River Fuel Co. v. Sutton, 260 Ky. 288, 84 S. W. (2d) 79; Buckley v. Buckley, 251 Ky. 271, 64 S. W. (2d) 593; Harris v. Tuttle, 62 S. W. 729, 23 Ky. Law Rep. 220; and Johnson v. Beattie, 265 Ky. 264, 96 S. W. (2d) 762. Additional ones to the same effect will be found in West's Kentucky Digest, under the subject Appeal and Error, Key 76.

In the Tuttle Case—following the rule that a judgment to be final must confer some right that may be enforced without further orders of the court and which puts an end to the litigation on that issue—it was held

734

that a bare order adjudging priority of liens, without going further and directing the enforcement of the liens, was only an interlocutory one that the court might ignore before entering enforcement orders and determining the final rights of the parties. Fortifying that conclusion the prior cases of Worthington v. Brooks-Waterfield Company, 49 S. W. 450, 20 Ky. Law Rep. 1432; Bondurant v. Apperson, 4 Metc. 30, and Hanson v. Bowyer, 4 Metc. 108, were referred to, and in which the same determination was made. Later cases are to the same effect and which was recognized in our last one dealing with the question, which is the Johnson case supra. However, in that, and other prior ones referred to therein, the judgment under consideration went further than to merely determine the priority of liens, and entered appropriate orders for enforcement of the liens and the payment to the contested litigants according to the adjudged priority. Therefore, we held in it that the judgment was final—not because it adjudged priority of liens as between the litigants— but because it went further and complied with the requisites necessary to make it final. The judgment relied on this case as a bar to appellee's right to priority over the appellant did nothing but adjudge the existence of her mortgage and then determined that her lien was superior to that of appellee. It made no provision whatever to enforce such declarations and it can, therefore, be given no greater effect than was given to a similar judgment in the Tuttle and other cases referred to. It follows that the court did not err in ignoring it when rendering the judgment appealed from, since it was not authorized to determine otherwise.

Wherefore, for the reasons stated, the judgment is affirmed.