762 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
United States of America, Plaintiff-Appellee,
v.
I.R. Hicks, Defendant-Appellant.
 No. 84-5634
 United States Court of Appeals, Sixth Circuit.
 4/4/85
 
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 BEFORE: WELLFORD and MILBURN, Circuit Judges; PHILLIPS, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant I. R. Hicks appeals the decision of the district court granting summary judgment to the plaintiff in this action brought by the United States of America to recover on a guaranty contract. This appeal raises two issues: (1) whether the court erred in rejecting the defendant's argument that there was no contract because the document he signed lacked essential terms; and (2) whether the district court erred in holding that parol evidence offered by the defendant to show that he signed the guaranty contract, not in a personal capacity, but rather as a representative of a corporation was inadmissible.
 
 I.
 
 2
 The defendant is President of Elkhorn Motors, Inc., a corporation ('Elkhorn'), all of whose stock is owned by the manager, 'Sonny' Leslie. Leslie obtained a note from the First National Bank of Keystone in order to facilitate a loan to Elkhorn. The note, which names the Small Business Administration ('SBA') as a party in interest, provides that the indebtedness will continue in the event of an assignment by the holder. Leslie also obtained a guaranty contract from the bank which obligates the signatories thereto to pay the outstanding liability owed by Elkhorn under the note in the event Elkhorn defaults.
 
 
 3
 Leslie took the note and the guaranty, both of which he signed, to the defendant for signing. Leslie deposed that when he obtained the documents from the bank they were complete, with the possible exception of the date. Although Hicks deposed that he did not read the guaranty contract before execution, he also indicated to the district court during a hearing that he would testify that the typed portions of the guaranty contract were blank when he signed the document. Regardless, the note was executed by Leslie and Hicks in their capacities as representatives of Elkhorn; however, the guaranty contract, an SBA form, contains no indicia of representative capacity by either Leslie or Hicks.
 
 
 4
 After Elkhorn defaulted on the note, both the note and the guaranty were assigned to the SBA. A default judgment was obtained against Leslie. The United States brought the present action against the defendant seeking Fifty-two Thousand Nine Hundred Twenty-three and 46/100 Dollars ($52,923.46) plus interest. The defendant admitted signing the guaranty but raised as a defense that, at the time of the signing, he intended to do so as a representative of Elkhorn.
 
 
 5
 On August 16, 1983, the United States filed a motion for summary judgment. The court denied the motion, but directed the parties to brief the issue of whether the defendant could testify that he did not intend to sign in his individual capacity. The court thereafter ruled that the guaranty contract was unambiguous and that parol evidence could not be introduced to vary the terms of the contract. Following this action, the United States resubmitted its motion for summary judgment which was granted by the court. This appeal followed.
 
 II.
 A.
 
 6
 First, the defendant argues that an issue of material fact exists as to whether the document was blank at the time he signed. However, in reaching its decision the district court assumed that the contract was in blank when signed as it was construing the facts in the light most favorable to the defendant in the context of the summary judgment motion. The court held that this assumption made no difference based on two alternative theories. First, the court held that assuming that the guaranty gualified as a UCC Article 3 'instrument,' then under Ky. Rev. Stat. Sec. 355.3-115(1), the incomplete instrument could later be completed in accordance with authority given and enforced as completed.
 
 
 7
 This theory is clearly inapplicable. As used in Article 3, the term 'instrument' means a negotiable instrument. Ky. Rev. Stat. Sec. 355.3-102(1)(e). In order to be a negotiable instrument, a writing must, among other things, contain an unconditional promise to pay a sum certain in money, be payable on demand or at a definite time, and be payable to order or to bearer. Ky. Rev. Stat. Sec. 355.3-104(1)(b), (c), and (d). The guaranty contract at issue, however, does not specify a 'sum certain,' nor is it payable at a particular time or on demand since it is a 'continuing' guaranty, nor is it payable either to order or to bearer. See Brooks v. United Kentucky Bank, 659 S.W.2d 213, 215 (Ky. App. 1983).
 
 
 8
 In the alternative, the court held that the defendant was liable under the analysis of Brooks, supra. Brooks concerned an action to enforce a guaranty contract similar to the one in the present case. At the time Brooks signed the guaranty form, spaces for the name of the borrower whose account was being guaranteed, the maximum amount to be guaranteed, and the date were left blank. The blanks were later filled in by a secretary at the bank. After holding that Ky. Rev. Stat. 355.3-115(1) was not applicable, the Kentucky Court of Appeals held that Brooks was nonetheless liable based on applicable common law, that is, that a contract incomplete when signed may be enforced as completed against the party signing it if its completion is as authorized by that party.
 
 
 9
 In the case sub judice, the district court held that, even viewing the facts in the light most favorable to Hicks, the evidence showed that Leslie was authorized by Hicks to negotiate the terms of the loan and that Hicks was bound by the guaranty which was completed in accordance with the terms that Leslie had negotiated.
 
 
 10
 We agree. The record is clear that there was a close relationship between Hicks and Leslie. Hicks was the President of the borrowing corporation and Leslie was the Vice President and General Manager. Hicks attended one meeting together with Leslie to discuss the loan wi h the Office of Economic Opportunity, which meeting was also attended by an SBA representative. Hicks attended this meeting because Leslie thought that for something 'as important as $125,000,' Hicks should be present. (Leslie Depo. at p. 25). Hicks' relationship with Leslie and his family was very close; Hicks was Leslie's godfather. Therefore, we affirm the district court's holding that:
 
 
 11
 [I]t is evident that Hicks trusted Leslie, and knew about the existence of the loan negotiations and the amount of the loan, . . .. Because of Hicks' knowledge as to the terms of the loan and the trust between Hicks and Leslie, the court finds as a matter of law that Hicks was authorized to close the loan and direct the bank to fill in those blanks.
 
 B.
 
 12
 Defendant's second argument is that the district court erred in holding as inadmissible parol evidence offered by the defendant to show that he signed the contract in a representative capacity. The defendant argues that the offered parol evidence should be admissible because the evidence is offered not to vary the terms of the contract, but rather to prove there was no contract at all. The district court ruled that the guaranty contract was unambiguous and that parol evidence would not be admissible at trial to vary its written terms.
 
 
 13
 The government argues that this issue is controlled by Moore v. Spicer, 249 Ky. 464, 61 S.W.2d 5 (Ky. App. 1933). In Moore, the parties entered into a written contract by which the Moores sold, and Spicer bought, twenty-five (25) shares of stock. After Spicer refused to accept and pay for the stock, the Moores brought an action to recover the purchase price and interest. Spicer filed an answer alleging that at the time the contract was made he advised the Moores that he was acting only as an agent for two physicians. The Kentucky Court of Appeals stated:
 
 
 14
 Here the contract was in writing, and was adopted by the parties as the final and complete expression of the agreement. Spicer signed the agreement in his own name, and there was nothing on its face to indicate that he was acting as agent for the two doctors, or anyone else. In the circumstances, the contract was integrated, . . ., and he cannot escape liability by showing by extrinsic evidence that he disclosed his agency and mentioned the name of his principals at the time the contract was executed.
 
 
 15
 Id. at 467; 61 S.W.2d at 6 (citations omitted).
 
 
 16
 We agree that the case sub judice is controlled by Moore. Hicks signed the contract without any indicia of representative capacity. The parol evidence offered by Hicks would contradict the terms of the written instrument because the contract unambiguously bound Hicks personally. The court also notes that it would have made little sense for Hicks to sign the guaranty contract on behalf of Elkhorn Motors in a representative rather than an individual capacity. A guaranty by Elkhorn to guarantee its own performance would add nothing to its existing obligations. See Ricker v. B-W Acceptance Corp., 349 F.2d 892, 895 (10th Cir. 1965).
 
 
 17
 Hicks' affidavit in this case states that he was formerly President of Farmers Bank of Petersburg, Kentucky, and it is uncontested that for many years he was engaged in business as officer and principal of Elkhorn Motors. The plain language and import of the documents in this controversy, even assuming the guaranty form was signed in blank, indicate a personal and unconditional undertaking by defendant, an experienced banker and businessman.
 
 III.
 
 18
 For the reasons stated herein, the decision of the district court is AFFIRMED.