Puff v. Puff.

---

CASE 37.—ACTION BY A. PUFF AGAINST KATE PUFF TO RECOVER FROM HER CERTAIN MUNICIPAL BONDS.—October 2, 1907.

## Puff v. Puff.

Appeal from Campbell Circuit Court.

Judgment for plaintiff and defendant appeals.— Affirmed.

1. Gifts—-Inter Vivos—Distinguished from Other Transaction.— A writing in the following form:  "Received of H. for K. the sum of $1,007.25, and I hereby relinquish all my claim to the balance of $1,500 worth of securities, excepting that in the event of the necessity that K. shall pay me $3.00 per week until my death.  [Signed] P."—is not an irrevocable gift inter vivos, but a sale or release.

2. Pleading—Issues and Proof.—While, as a general rule, a writing cannot be varied except for fraud or mistake pleaded, if the writing relied on is not pleaded in any form,  but appears for the first time when introduced in evidence, the opposing party should be permitted  to attack  it on the ground of fraud, mistake, or undue influence without pleading such facts.

3. Release—Validity—-Undue Influence.—Where a man 77 years old and infirm put $2,500 worth of bonds in a deposit box in the name of his daughter-in-law as trustee, with the understanding that she was to pay him the interest and deliver the bonds on demand, but she afterwards refused to deliver him $1,000 worth of bonds on his request until he signed a writing relinquishing his claim to the balance, the writing was obtained by both undue influence and duress.

4.  Same—Lack of Consideration.—Where plaintiff put bonds in
    a deposit box in the name of defendant as trustee, with the
    understanding that the defendant was to pay him the interest
    and deliver the bonds on demand, but she afterwards refused
    to deliver him a part of the bonds on request, until he signed
    a writing relinquishing his claim to the balance, the writing
    was void for lack of consideration.

5.  Appeal—Review—Harmless Error—Instructions.—Where an
    instruction left to the jury the  question of  ownership of
    property alleged to be conveyed by a writing, and the jury
    found for plaintiff, but the writing on which defendant based
    her claim was void, the error, if any, was harmless.

HODGE & WOLFF for appellant.

A. M. CALDWELL for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, COM-
MISSIONER—Affirming.

Appellee, A. Puff, plaintiff below, filed suit in the
Campbell circuit court against Kate Puff, alleging
that he was the owner and entitled to the possession
of certain municipal bonds of the face value of $1,500
which the defendant, Kate Puff, on or about the —
day of October, 1904, received from him, in order
that she should safely keep the same for him and re-
turn them to him upon his request; that on said date,
he delivered to said defendant for the purposes afore-
said, including said $1,500 worth of bonds, bonds the
face value of which aggregated the sum of $2,500;
that on the 14th day of May, 1906, at his request, de-
fendant returned to him a part of said bonds, the face
value of which amounted to $1,000, but that she still
retains and has possession thereof, to-wit, $1,500;
that he had repeatedly made demand on her for the
return of same to him, but that she refused to return
them; that he was then 77 years of age, infirm and
placed his confidence in the defendant and made no

note, nor kept any description of said bonds and was therefore unable to give a complete and accurate description thereof; that the market value of the bonds so held by the defendant was at least $1,600. He then asked judgment for said bonds or their equivalent in money and $200 damages for their detention.

Thereupon, appellant, the defendant below, filed her answer, denying the allegations of the petition and asserting that she was the owner of and claimed the said bonds as her absolute property.

The facts developed upon the trial were as follows:

Appellee, A. Puff, had acquired in the city of Newport real estate to the value of about $10,000. Upon the death of his wife, he divided his real estate among his children, requiring them to pay him a small consideration therefor, and in that way, reserved to himself $2,500, which he invested in certain municipal bonds. After he gave his property to his children, they appeared indifferent to him and refused to have anything further to do with him. After his own children turned against him, he placed confidence in the appellant, who was his daughter-in-law, because, as he said, he thought she was an honest woman and a good Christian. Appellant agreed with appellee that it would be well to put the bonds where they would be safe and they consulted Mr. Gunkel, an attorney in Newport, as to what was the best thing to do with them. Mr. Gunkel advised them to put the bonds in a safe deposit box in Kate Puff's name, as trustee, with the understanding with the deposit company that appellee should have access to the box at any time. Acting upon the suggestion of the attorney, they rented in the month of October, 1904, a safe deposit box from the Newport National Bank in the

vol. 139—23

name of Kate Puff, as trustee, and at the same time
A. Puff was, by written authority, given access to the
box to be exercised whenever he desired. In fact,
as Mr. Gunkel puts it, "He could go there and take
all the bonds." It was further understood that Kate
Puff was to hold the bonds and pay A. Puff the inter-
est thereon every six months and, upon his request
and demand, she was to deliver the bonds or any part
thereof.

This arrangement was carried out all right until
about the 14th day of May, 1906, when the appellee
desiring about $1,000 of the principal of the bonds in
order to pay his admission into the Old Men's Home
in Cincinnati, Ohio, requested appellant to let him
have this amount of the bonds. Appellant, however,
refused to deliver the bonds to him and appellee there-
upon consulted Mr. Gunkel, an attorney of Newport,
who made demand on the appellant for the desired
sum. Appellant refused to consider the matter at all
and absolutely declined to pay appellee the sum of
$1,000, unless appellee would enter into a contract
with her, by which he released his interest in the re-
mainder of the bonds amounting to $1,500.

On this point, Mr. Gunkel testified as follows:

"I told him they would not give him this money and
he would have to sign this receipt, waiving his right
to the $1,500. I said to him, if we don't do that, you
will not get this amount, this collection."

Thereupon, appellee signed the following writing:

"Newport, Ky., May 14, 1906.

"Received of J. E. Hesselbrok for Mrs. Kate Puff
the sum of $1.007.25, and I hereby relinquish all my
claim to the balance of $1,500 worth of securities held
by her, excepting that in the event of the necisity
that Mrs. Kate Puff shall pay me $3 per week until
my death.                                A. PUFF."

Subsequently, appellee demanded the return of the $1,500 worth of bonds and, upon her absolute refusal to turn them over to him, instituted this action.

No evidence was introduced by appellant, except the above writing, the execution of which was proved by appellee and attorney Gunkel. All the circumstances of the case were brought out by appellee and Mr. Gunkel without any objection on the part of the appellant.

At the conclusion of the testimony, appellant asked for a peremptory instruction, which was refused. The court thereupon instructed the jury as follows:

"The jury are instructed that if they believe from the evidence that plaintiff is the owner and entitled to the possession of the bonds described in the proof, they will find for the plaintiff and fix the value of said bonds and damage plaintiff may appear entitled to governed by the proof, however, such damages are not to exceed the sum of $200.

"If the jury believe from the evidence that the plaintiff is not the owner and entitled to the possession of the bonds, then you will find for the defendant."

Upon submission of the case, the jury returned the following verdict:

"We, the jury, find for the plaintiff, A. Puff, and fix the value of the bonds at $1,500."

Appellant then filed a motion for a judgment notwithstanding the verdict, which motion was overruled by the court.

Appellant then filed motion and grounds for a new trial, which were overruled and an appeal granted to this court.

Appellant contends that the bonds are an irrevocable gift inter vivos; that there was an immediate

delivery and the purpose thereof explained by the writing introduced as evidence; that this writing is incontrovertible so long as it is not attacked for fraud or mistake.

We are unable to agree with this contention of counsel. The writing itself does not purport on its face to be a gift. Even if the $1,007.25, referred to in the first part of the writing be not regarded as the consideration therefor, the 'latter part thereof does import a consideration; so that the contract must be regarded as either one of release or of sale. But even if it purported to be a contract of gift, the circumstances under which it was executed, all of which were proven by the very witnesses by which the execution of the instrument was established and without objection by counsel for appellant, conclusively show that it was not such a contract.

Counsel for appellant further insist that the writing in question could not be varied or altered, except for fraud or mistake pleaded. We admit that this is a general rule, but we think that this doctrine is and should be subject to the modification that if the writing relied upon is not embraced in, or referred to in the pleading of the party relying upon it, but appears for the first time when introduced in evidence in the case, and the opposing counsel therefore has no opportunity to attack the writing, on the ground of fraud, mistake or undue influence, the opposing party should be permitted to introduce testimony, showing fraud, mistake or undue influence, without being required to plead them. That being the case, the question therefore is whether or not appellee was subjected to undue influence or was under duress at the time he executed the writing in question. The evidence conclusively shows that he had confi-

dence in his daughter-in-law; that the bonds were turned over to her merely for safe keeping; that she had no title whatever to the bonds; that she was to give them to him whenever he demanded them; that, upon his demand, she refused to give them to him; that, for the purpose of obtaining $1,000 worth of the bonds, he was compelled to sign an instrument releasing to her the remaining $1,500 worth of bonds. In other words, he had to give up three-fifths of his own property for the purpose of obtaining the remaining two-fifths thereof. All this took place when the appellee was old and infirm and with but little, if any, appreciation of the character of the transaction in which he was engaged, and when he needed the money for the purpose of obtaining admission into the Old Men's Home at Cincinnati. This testimony stands uncontroverted. Even in the face of such testimony, appellant did not take the stand to explain her part in the transaction.

We, therefore, conclude that the writing was obtained both by undue influence and duress, and furthermore that it was absolutely without consideration.

Counsel further contends that the instruction of the court referred to above is erroneous in that it is not predicated upon the writing, but leaves to the jury the right to pass upon the validity of the writing. We deem it unnecessary to pass on this contention in as much as this court is of the opinion that the writing in question was obtained by undue influence and duress and was entirely without consideration, and as no proof was introduced by appellant to show the contrary, appellee was therefore entitled to a peremptory instruction, and we do not think the giving of the instruction complained of was prejudicial to appellant.

Judgment affirmed.