## Whiteside v. Murphy.

(Decided March 13, 1917.)

Appeal from Jefferson Circuit Court
(Common Pleas Division, No. 1).

1. Fraud—Conspiracy to Perpetrate Fraud.—Although a conspiracy is charged through and by which the defendant perpetrated the fraud as a foundation for the suit, the plaintiff is entitled to

recover if the evidence establishes fraud on the part of the defendant without proof of the alleged conspiracy. The alleged fraud is the gravamen of the action, and not the alleged conspiracy.

2. Evidence—Impeachment of Writing.—A writing presented for the first time upon the trial as evidence may be impeached by the one against whom it is introduced for fraud or other invalidating facts without a pleading to that effect, and this is so although the one relying upon the writing may be a stranger to it but who is in privity with the one who fraudulently procured it.

3. Evidence—Impeachment of Evidence—Trial.—W. executed notes to a bank and pledged with it collaterals to secure the debt. He afterward signed a writing purporting to convey the collaterals to R. who conveyed them to M. In a suit by W. against M. for a conversion of the collaterals the former may show that at the time he executed the writing to R. he was incapacitated mentally to do so, and that M. had knowledge of such fact, although the writing was not attacked by his pleading if the writing was first introduced as evidence and not referred to in any of the pleadings.

JOSEPH SOLINGER and FRED FORCHT, JR. for appellant.

DODD & DODD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellant and plaintiff below, William S. Whiteside, was the owner of 557 shares of the capital stock of the Tip Top Baking Company, a corporation doing business in Louisville, of the par value of $50.00 per share, all of it being fully paid. These shares constituted a great majority of the capital stock of the corporation. He also owned a considerable number of notes executed by various grocers doing business in Louisville for some of the stock of the corporation which they had purchased from him, aggregating $8,350.00, all of which were and are conceded to be solvent. On May 14, 1912, Whiteside executed his individual note to the Second National Bank of New Albany, Indiana, for the sum of $11,000.00, due five months thereafter. At that time the bank held another note executed by Whiteside for the sum of $522.15, and also a note for the sum of $5,000.00, which had been executed in 1910 and renewed from time to time by the Tip Top Baking Company, by plaintiff, who was general manager of the corporation, and upon which plaintiff and one J. V. Reed, who was likewise interested in the corporation, appeared as endorsers. Before the $11,000.00 debt was created, plaintiff pledged to the Second

National Bank as collateral security for the $5,000.00 note, one hundred shares of the capital stock of the baking company, and at the time he executed the $11,000.00 note he deposited as collateral security for it, as well as the indebtedness represented by the other two notes, his remaining 447 shares of the capital stock of the baking company and the notes for $8,350.00 hereinbefore mentioned.

On October 31, 1912, the indebtedness represented by each of the notes being due and unpaid, plaintiff executed to J. V. Reed a writing, the substance of which is that in consideration of Reed agreeing to assume and discharge all of the notes with accumulated interest, plaintiff sold and transferred to him all of the collaterals which he had pledged with the bank, being, as stated, 557 shares of the capital stock of the baking company, and the notes called in the record grocers' notes, amounting to $8,350.00, as stated.

On November 2, 1912, three days after the execution of that writing, Reed, in consideration of $14,000.00 then paid by appellee (defendant) Thomas M. Murphy, transferred and delivered to him all of the above collateral. The stock in the baking company was afterward transferred on its books to the defendant, and he took charge of the grocers' notes, but whether he has collected any of them does not appear. This suit was filed by plaintiff against the defendant Murphy charging him with fraudulently conspiring with the bank to procure, and that he in that manner did procure, the possession of the collaterals which were worth at that time, as plaintiff alleged, $36,200.00, and which defendant, as alleged, fraudulently and wrongfully converted to his own use, and damages were asked for the difference between the amount of the $11,000.00 note and the $522.00 note, with interest, less a credit which resulted from the collection of some of the grocers' notes by the bank and the value of the collateral, amounting, as plaintiff claims, to the sum of $26,517.47.

The answer denied each and every allegation of the petition. An amended answer was afterwards filed which was sought to be made a cross-petition against Reed, and in which defendant attempted to set up the writing which the plaintiff had executed to Reed on October 31, 1912, and through which he claimed title to the collaterals with the conversion of which he is charged in the petition. Upon motion of the plaintiff this pleading was stricken from the files.

After the existence of the writing of October 31, 1912, had been manifested by the offered amended answer, an amended petition was sought to be filed by plaintiff in which he offered to withdraw the conspiracy charges in the petition and alleged that the writing of October 31, 1912, through which the defendant claims title to the collaterals, was executed without consideration, and at a time when plaintiff was under the influence of intoxicating liquor to such an extent as to impair his mental faculties so that he was incompetent to execute it or to transact business of any character, and that he had been in such condition for months prior to and following that date, and that if he executed such writing (which he did not remember), that he did not do so understanding its contents, and that Reed at the time had full and complete knowledge of plaintiff's impaired mental condition. To the filing of this amendment defendant objected, and its objections were sustained and the pleading refused, which was followed by exceptions.

It is not shown in the record the reason for the court's action in rejecting this amendment, but we surmise that it was because defendant failed to allege therein that the defendant Murphy also shared the knowledge possessed by Reed as to plaintiff's condition at the time the writing was executed. At this point we will say that for the reason indicated we think the court correctly held the amendment insufficient and properly rejected it. The case went to trial upon the original petition and the denial of all of its allegations made by the answer, and after hearing the testimony introduced by the plaintiff, the court gave the jury a peremptory instruction to find for the defendant, which it did, and to reverse the judgment rendered thereon this appeal is prosecuted.

The court was prompted to sustain the motion for a directed verdict because it was of the opinion that plaintiff's testimony failed to establish a conspiracy between defendant and the bank, and that whatever else the testimony might show, plaintiff was confined to his right to relief to the charge of conspiracy, and that as he failed to establish it, he could not recover. We recognize the general rule that a litigant is bound by his pleading, but its application should not be carried to the extent of defeating his right to relief when the conspiracy is not the essential, but only an incidental ground for the relief sought.

It will be observed that the foundation of plaintiff's claim is fraud practiced by the defendant through and by

means of which he wrongfully gained possession of the collaterals deposited with the bank, and plaintiff's allegation that such fraud was perpetrated through and by a conspiracy with the bank is only an attempt to show the means by which the fraud was perpetrated. In other words, it was sought to point out by the charge of conspiracy the vehicle which delivered to the defendant the collateral, but the *essential* cause of action is the fraudulent conversion of the collateral after defendant became possessed of it. Because the testimony may have failed to show or establish the alleged means through which plaintiff's possession of the collateral was obtained would not prevent a recovery for the wrongful and fraudulent conversion of it. We have recently had this question of practice before us in the two cases of McClintock v. McClure, 171 Ky. 714, and Leach v. Farmers' Tobacco Warehouse Company, idem. 791.

In the McClintock case the plaintiff sought to recover damages for injury to his business and business standing charged to have been brought about through a conspiracy between four defendants, including the appellant in that case. The proven wrong was one committed only by the appellant, and he sought to evade responsibility for the wrong proven against him because the conspiracy charged in the petition had not been proven. This court, however, declined to endorse the appellant's contention therein, and in doing so, said:

"We, therefore, conclude that this action had developed, when ready for submission to the jury, into one for libel purely and simply, and while this charge had been presented originally as a component part of the charge of conspiracy, the appellee was entitled, nevertheless, to have that matter finally determined by the jury in this case."

Further along in the opinion the court quoted with approval the following from 8 Cyc. 647:

"An averment that the acts were done in pursuance of a conspiracy does not change the nature of the action or add anything to its legal force and effect. If a plaintiff fail in the proof of a conspiracy or concerted design, he may yet recover damages against such of the defendants as are shown to be guilty of the tort without such agreement. The charge of conspiracy where unsupported by evidence will be considered mere surplusage not necessary to be proved to support the action.

"This being so, the question arises for what purpose is the allegation and proof of conspiracy important?

The answer is that when the mischief contemplated is accomplished the conspiracy becomes important as it may affect the means and measures of redress. It may be pleaded and proved as aggravating the wrong which plaintiff complains of and to enable him to recover against all the defendants as joint tort-feasors. The party wronged may look beyond the actual participants in committing the injury, and join with them as defendants all who conspired to accomplish it."

The Leech case was a similar one, and was based upon a charge of conspiracy, as was the McClintock case. The proof wholly failed to sustain the conspiracy, but there was proof of the tortious acts against one of the defendants, and this court held that the case should have been submitted to the jury as to that particular defendant, although the conspiracy had not been proven, and in doing so, said:

"We say this because it is a well-recognized rule that 'though a conspiracy is charged, yet, if on the trial, the evidence connects but one person with the wrong actually committed, the plaintiff may recover against him as if he had been sued alone.' Cooley on Torts, page 126; VanHorn v. VanHorn, 52 N. J. L. 284, 10 L. R. A. 184; Hutchins v. Hutchins, 7 Hill (N. Y.) 194; Parker v. Huntington, 2 Gray (Mass.) 124; Young v. Gormley, 119 La. 546; Fillman v. Ryon, 168 Pa. St. 484; Brackett v. Griswold, 112 N. Y. 454."

In view of this well-established rule, plaintiff would be entitled to recover if the testimony showed a fraudulent or wrongful conversion of the collaterals, although the fraud was not accomplished through the alleged conspiracy.

This brings us to a consideration of the testimony as to whether there was any proof of fraud on the part of the defendant shown by the testimony heard or offered by the plaintiff, but rejected by the court. At the outset the record shows that the collateral composed of the grocers' notes was, as we have seen, perfectly solvent, and while there is some dispute as to the value of the stock of the baking company, it is shown that it was worth at least eighty cents on the dollar, and that defendant since he has had possession of it has collected a fair annual dividend therefrom. This would make the stock worth $22,280.00, which, with the grocers' notes, would make the entire collateral turned over to the defendant worth $30,630.00. Deducting from this the amount of all the debts to secure which the collaterals

were placed with the bank, would leave something near $14,000.00 which plaintiff will be entitled to recover, if it should be found that defendant was guilty of the fraudulent conversion charged against him.

Proof was offered by the plaintiff showing that for months prior to the execution of the writing of October 31, 1912, and prior to November 2, 1912, when the collaterals were endorsed to and delivered to the defendant, that he had been drinking to such excess that he was afflicted with delirium tremens. He offered to show that on the morning of the day the collaterals were delivered to the defendant he had taken twenty-five drinks of whiskey; that the defendant knew of his excessive drinking and of his condition and went with him from Louisville to New Albany, was present at the time, and was fully aware of plaintiff's imbecile condition growing out of such excessive drink. He furthermore offered to prove by a physician the facts just recited, and that they existed "to such an extent as to effect his mental capacity to engage in business transactions." It was furthermore offered to be shown by the physician that plaintiff was taken to St. Louis, Missouri, on November 5, 1912 (three days after defendant procured the collateral), for the purpose of being treated for inebriety; that on the way from Louisville to St. Louis plaintiff consumed three quarts of whiskey; that he remained in the sanitarium for about four weeks, after which the witness again saw plaintiff, who was in a state of mental collapse and exceedingly nervous, and that plaintiff afterwards made a trip east for recuperation, which lasted about six weeks. This offered proof was rejected by the court, as we suppose, upon the ground that there was no allegation in any of plaintiff's pleadings, or offered pleadings, that defendant knew of his mental condition when the transaction complained of was made; and upon the further ground that in the absence of a pleading, plaintiff could not attack the validity of the writing executed to Reed on October 31, 1912. In this, we think the court was in error. The point raised presents the question whether a litigant against whom a writing is introduced for the first time as evidence upon the trial may show by the proof (and without pleading) the circumstances under which the writing was executed establishing its invalidity. It is the contention of the defendant that such evidence, unsupported by a pleading, is incompetent, while the contrary is endeavored to be maintained by counsel for appellant, and in support of the latter's

contention, we are referred to the cases of Puff v. Puff, 139 Ky. 351; Martin v. Ferguson, 31 Ky. Law Rep. 1095; Levine v. Mitchell, 144 Ky. 380; City of Covington v. Rengenthal, 33 Ky. Law Rep. 337; Hager, Auditor, v. Sidebottom, 130 Ky. 687; and Castleman-Blakemore Co. v. Pickrell & Craig Co., 163 Ky. 750.

It would render this opinion too long to consider the facts of each of those cases or to show their similarity to the situation presented in the case under consideration, and we will notice only such of them as are necessary to show the rule of practice which they uphold.

In the Puff case the defendant attempted to rely upon a writing which the plaintiff had executed. This appeared for the first time upon the trial and as evidence on behalf of defendant. The plaintiff attempted to impeach the writing by proof and upon which no attack had been made by his pleading. The vice in the writing there sought to be overthrown by the testimony was that it had been procured by undue influence and through duress. He was permitted to do this by the trial court, and the question was raised upon appeal to this court, and in upholding the ruling of the trial court on that point, this court said:

"Counsel for appellant further insist that the writing in question could not be varied or altered, except for fraud or mistake pleaded. We admit that this is a general rule, but we think that this doctrine is and should be subject to the modification that if the writing relied upon is not embraced in, or referred to in, the pleading of the party relying upon it, but appears for the first time when introduced in evidence in the case, and the opposing counsel therefore has no opportunity to attack the writing, on the ground of fraud, mistake or undue influence, the opposing party should be permitted to introduce testimony showing fraud, mistake or undue influence, without being required to plead them."

In the more recent case of Castleman-Blakemore v. Pickrell & Craig Co., the question of practice now being considered was again before this court and was disposed of by the court, saying:

"It is a rule in this state that where a written contract is not pleaded, but appears for the first time in evidence, the opposing party may introduce evidence showing fraud or mistake without being required to plead them."

The other cases mentioned fully sustain the principle, and we are convinced that the rule announced by them is

in perfect accord with the fundamental rules of pleading and practice. There could be no better illustration of the wisdom of the rule than is found in this record. It is the plaintiff's contention that at the time the writing in question was executed that his mind was benumbed and confused, and that he had no recollection of having signed it, and he could not therefore refer to it in his pleading or attack it therein for the reason that he had no knowledge concerning its existence and it was impossible to call in question by his pleading a writing about which he knew nothing. As the case is presented, reliance is made upon the writing in question for the first time when it is offered in evidence, and under such circumstances, as was said in the Puff case—"The opposing counsel, therefore, has no opportunity to attack the writing, on the ground of fraud, mistake, or undue influence; the opposing party should be permitted to introduce testimony showing fraud, mistake, or undue influence without being required to plead them."

It is insisted, however, that this rule should be confined in its application to litigation between the immediate parties to the writing sought to be impeached. We are unable to agree with this contention, for we can discover no reasonable distinction between the application of the rule as between the immediate parties to the writing, and its application between the party attacking it and one standing in privity with the other party and who is seeking to establish or sustain his contention through the questioned writing. Just as in the case under consideration, the defendant Murphy is endeavoring to justify his title to the collaterals through the aid of the writing in question, and if it for any reason is either void or voidable, and he possessed knowledge of the facts rendering it so, he acquired no greater rights thereunder than those possessed by the one to whom it was executed, and through whom he claims. The only difference between a case wherein the parties to the contract only are involved, and one where a third person is involved, is that in the latter the proof should show that such third person had knowledge of the vice affecting the writing at the time he acquired his rights. This was offered to be shown as against defendant Murphy on the trial by the evidence which was rejected, and although the defendant was not a party to the writing, we are convinced that the plaintiff should have been allowed to prove the invalidating facts and defendant's knowledge of them, and that the court erred in rejecting

the testimony to that effect. It should have admitted the testimony as to the mental condition of the plaintiff at the time he executed the writing of October 31, 1912, and at the time defendant procured the possession of the collaterals, and all other testimony tending to show that the defendant had knowledge of his mental condition at such times.

The case should have been submitted to the jury under an instruction requiring it to find for the plaintiff if the jury should believe from the evidence that the defendant fraudulently procured from the bank the collaterals in question and converted them to his use, and that he fraudulently procured them if they were turned over to him by the bank under authority obtained from plaintiff at a time when he was mentally incapacitated to transact business and at a time when he did not appreciate what he was doing, and of which mental condition, if there was such, the defendant at the time had knowledge. Of course the plaintiff should not, in any event, recover more than the proven value of the collaterals, less his indebtedness to the bank.

If plaintiff desires, he should be permitted to correct his offered amended petition so as to conform to this opinion, and if done, it should be filed.

Wherefore, the judgment is reversed, with directions to proceed in accordance with this opinion.