## Moore v. Pope.
(Decided Oct. 8, 1935.)

B. M. LEE for appellant.

C. B. SPICER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

We state the substance of the petition of the appellee, H. H. Pope, against the appellant, Mrs. Mary Stuart Moore, and her husband, H. R. Moore. On September 12, 1930 (1931 by inadvertence), the plaintiff signed as surety for H. R. Moore notes amounting to $1,000, payable to J. W. Bomar, and at the time it was agreed by him and both of the defendants, as a consideration therefor, that H. R. Moore would place as collateral security for the notes two certificates of stock in the Modern Motor Company, of Harlan, one of the certificates being for 10 and the other for 15 shares. The two certificates, worth $2,500, were attached to the notes at the time plaintiff signed them, and it was agreed that they would remain with the notes until they were paid. The certificates had been issued to H. R. Moore and were ample security to satisfy the debt. After the plaintiff signed the notes under that agreement and those circumstances, the defendants, for the purpose of cheating and defrauding him, detached the certificate for 15 shares and Moore transferred and assigned the same to his wife, she knowing that the certificate had been pledged as collateral security for the payment of the notes due Bomar. When the notes became due, there was attached only the certificate for 10 shares. Suit had been filed on the notes by Bomar and the 10 shares of stock had been sold by order of court for the

satisfaction of the judgment. The proceeds were not sufficient, and the plaintiff as surety was compelled to pay $624.06. It is charged that Mrs. Moore, after receiving the certificate for the 15 shares of stock, converted the same to her own use and benefit and sold it for $1,500. Judgment for $624.06 was asked of the defendants. An attachment was levied on the proceeds of the sale of the stock.

Moore was not before the court except by constructive service. Only the defendant, Mrs. Mary Stuart Moore, answered. She did not deny the allegation of an agreement by her husband to pledge the stock, but did deny that she had made any such agreement or had any knowledge thereof or had consented thereto. She denied that the two certificates were attached to the notes, or that she had agreed that they would remain so pledged until the notes were fully paid. All of the other material allegations of the petition were traversed. It was further pleaded by Mrs. Moore that the 15 shares of stock had been issued to H. R. Moore in October, 1928; that she had loaned him $1,500 with which to purchase it; that her husband had executed his note for that sum to her and pledged the stock as collateral; that she had retained the actual and continuous possession of the certificate since its issual until it was tendered in court for delivery to C. B. Spicer, to whom she and her husband had sold the same; that in the suit with Spicer and others she had been adjudged a prior lien on the stock to secure the payment of her husband's note, and that it was sold by order of court. It was stated also that upon the contract for the sale of that stock and 10 other shares owned by her individually, she had recovered judgment for $2,500 against the purchasers. The reply joined issue on the affirmative allegations.

The evidence of the plaintiff in substance was that in the office of the Motor Company on the evening of September 12, 1930, there were present both Mr. and Mrs. Moore and several other persons; that the stock certificate of 10 shares (which he was buying from Bomar) and the 15 shares involved here, were attached to the notes when he signed them; that Moore suggested he could get another person to sign the notes as surety, but he told him he thought the stock, which was worth $2,500, was sufficient collateral; the certificate was in Moore's name, and for that reason he had not talked

with Mrs. Moore about the matter, but she was right there present and close enough to hear what was said and to know what was going on and that she made no claim to the stock or had anything to say about its pledge or the transaction. Other evidence corroborates Pope as to the presence of Mrs. Moore and tends to support his claims. He did not learn until after judgment was taken by Bomar against him that Bomar's petition set up that only 10 shares of the stock had been pledged. Although a party to the suit, Pope stated he had given the matter no attention upon the assumption that the $2,500 worth of stock would be ample to care for the obligation. The plaintiff also established his payment of $624.06 on account of his suretyship and that no part of it had been repaid.

The defendant, Mrs. Moore, emphatically denied being present on the occasion when the notes were signed, and testified that she knew nothing about the transaction until two months afterward. She had had the certificate for 15 shares pledged to secure her husband's note in her safety box at a bank from the time of its issual in 1928 until some time in January, 1930, when it was put in escrow for delivery to Spicer, to whom she and her husband had contracted to sell it. The certificate had remained there for two or three weeks, and upon Spicer's failure to accept the stock and comply with his contract she had returned it to her safety box, where it remained until some time in December, 1930, when it was delivered to her attorney for the bringing of the suit against Spicer and others on the contract. Her husband did not have access to the box. There was evidence tending to corroborate the defendant, except perhaps as to her absence when the notes were signed and her possession of the stock at that time.

J. W. Bomar, the payee in the note, and a key witness, did not testify and his absence is not explained. There is no plea to the effect that Bomar had let the collateral be taken down and thereby had released Pope as surety.

It may be noted that in the suit upon the contract for the sale of this stock to Spicer and others it was adjudged that Mrs. Moore had a prior lien on these 15 shares and owned 10 additional shares and was entitled to judgment against the purchasers for $2,500, to be credited by the proceeds of the stock sold by order of

court. See Moore v. Spicer, 249 Ky. 464, 61 S. W. (2d) 5.

We are of opinion that the instruction did not properly submit the issue. It was, in substance, that if the jury believed that the plaintiff, Pope, signed the notes as surety and at the time he did so it was agreed between him and H. R. Moore that Moore would place the two stock certificates with the notes as collateral security, and further believed that thereafter the certificate for 15 shares was removed from the notes and later sold by Mrs. Moore without the knowledge or consent of Pope, the jury should find for the plaintiff; and unless they so believed they should find for the defendant.

There is no contradiction that Pope signed the notes as surety, nor that the certificate of stock was not with the notes when suit was brought thereon by Bomar, nor that the stock was sold to others by Moore and wife. We do not conceive the liability of Mrs. Moore to depend upon whether her husband only promised to place the stock with the notes as collateral and did not do so. Such was the effect of the instruction. She had a prior lien on the stock to secure his debt to her. If she was present and her husband actually pledged the stock with her knowledge and consent to secure the debt to Bomar or to indemnify Pope as surety as though it were his absolute, unencumbered property, Mrs. Moore is estopped from denying any right in herself in the stock to the prejudice of Pope. Therefore, if she or her husband afterward withdrew the collateral without Pope's consent, and the stock was converted to her use or in satisfaction of her lien, then Mrs. Moore would be liable to Pope, who was subrogated to the equity and rights of Bomar, the payee of the note and his principal. Though there may have been no fraudulent purpose in the ordinary meaning, yet such action would be in law a fraud upon the rights of the surety. Newcomb-Buchanan Co. v. Baskett, 14 Bush. (77 Ky.) 658, 659; Farmer v. Gregory & Stagg, 78 Ky. 475, 1 Ky. Law Rep. 18; Burnes v. Daviess County Bank & Trust Co., 135 Ky. 355, 122 S. W. 182, 25 L. R. A. (N. S.) 525, 135 Am. St. Rep. 467; Barker v. Illinois Surety Co., 169 Ky. 441, 184 S. W. 377; Whiteside v. Murphy, 174 Ky. 583, 192 S. W. 632; Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833; People's Bank of Harrisville v. Continental Supply Co., 213 Ky. 44, 280 S. W. 458; Jones v.

Kentucky Glycerine Co., 226 Ky. 676, 11 S. W. (2d) 713; S. J. Marx Co.'s Trustee v. Marx, 223 Ky. 339, 3 S. W. (2d) 644; Jones on Collateral Securities, secs. 153b and 513; Anderson v. Waco State Bank, 92 Tex. 506, 49 S. W. 1030, 71 Am. St. Rep. 867.

Other grounds submitted for reversal of the judgment are that the appellant was entitled to peremptory instruction; the verdict is flagrantly against the evidence; and errors were committed in admitting incompetent and rejecting competent evidence. There does not appear to have been any prejudicial error in relation to the evidence, but upon all these matters we reserve decision.

Judgment reversed.