## Moore v. Pope.

(Decided May 3, 1938.)

B. M. LEE for appellant.

C. B. SPICER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE STITES—Reversing.

This is the second appeal of this case. Moore v. Pope, 260 Ky. 619, 86 S. W. (2d) 540. A corporation known as the Modern Motors, Inc., was organized in

1928 at Harlan. H. R. Moore, or "Red" Moore, husband of the appellant, Mary Stuart Moore, was employed by the corporation. He purchased a certificate for fifteen shares of its capital stock, which was issued in his name but was paid for by appellant. Moore gave appellant his note for $1,500, and the certificate was delivered to her. Later, she purchased ten shares in her own name. In January, 1930, Mr. and Mrs. Moore entered into a written contract with C. B. Spicer to sell him the entire twenty-five shares. In September, 1930, H. R. Moore purchased from J. W. Bomar ten shares of the Modern Motors, Inc., stock, for which he agreed to pay $1,000, and he executed twenty notes of $50 each, payable monthly. There is indorsed on each of the notes a statement that it was one in a series, and that, if one of them should be unpaid within ten days after maturity, then all the remaining notes should become due and payable. There is also written on each note: "This note secured with ten shares of Modern Motors, Inc., stock." The appellee, H. H. Pope, signed each of these notes as surety for H. R. Moore. It is asserted by appellee that at the time when the notes were executed and delivered to J. W. Bomar, it was agreed, in the presence of appellant, between himself and H. R. Moore, that the fifteen-share certificate of stock theretofore issued to H. R. Moore and held by Mrs. Moore should be pledged as collateral on the notes to Bomar in addition to the ten shares which H. R. Moore was then purchasing. Moore failed to pay any of the notes, and in December, 1930, a suit was filed by Mr. Bomar against H. R. Moore and appellee as his surety. No defense was made in that suit either by Moore or his surety, and it resulted in a judgment against the defendants and a sale of the ten shares pledged as collateral. After a sale of the stock, the balance due on the debt, with interest and costs, amounted to $624.66. The appellee, H. H. Pope, was required to pay this balance, and this is the principal amount of the judgment here involved. In April, 1931, Mr. and Mrs. Moore filed suit on the written contract which they had made in January, 1930, to enforce the sale of the twenty-five shares of stock to C. B. Spicer. After appeal to this court, the Moores were successful in that litigation. Moore v. Spicer, 249 Ky. 464, 61 S. W. (2d) 5. Thereafter, in 1933, this suit was filed by the appellee H. H. Pope, and an attachment was levied on the proceeds of the sale of the stock to Spicer. It

appears that Mr. and Mrs. Moore have become separated, and Moore made no defense to this suit. Mrs. Moore, on the other hand, filed an answer, as set out in the opinion on the former appeal. The judgment was reversed on the former appeal because of an error in the instructions, and all other questions were reserved.

It will be seen at the outset that the appellee is seeking by this suit to hold Mrs. Moore responsible upon an obligation to which she was not a party. As pointed out on the former appeal, "We do not conceive the liability of Mrs. Moore to depend upon whether her husband only promised to place the stock with the notes as collateral and did not do so." Unless some act of hers or some failure to act when she should have done so operated to the detriment of appellee, it is obvious that there is no basis for the assertion of a claim against her. The trial court properly presented this thought to the jury in its instructions. The evidence for appellee indicated that at the time when the notes to J. W. Bomar were executed, Mr. and Mrs. Moore and several other persons were present, although Bomar was not. It is claimed that at that time Moore, in the presence of Mrs. Moore, agreed to pledge the fifteen-share certificate together with the certificate for ten shares which he was then buying. It is likewise claimed that the fifteen-share certificate was there at the time and that Mrs. Moore made no objection and asserted no claim against the stock. Mrs. Moore, on the other hand, denies having been present on this occasion and asserts that the certificate remained in her possession during all of the periods involved. J. W. Bomar did not testify. The most that can be said of appellee's testimony is that it indicates an agreement on the part of H. R. Moore to pledge the fifteen-share certificate. When it comes to a consideration of whether or not the stock was actually pledged, we are confronted by circumstances which are overwhelming. Letters written by the attorney for Mr. Bomar on November 18, 1930, just two months after the transaction, show that but ten shares of stock were pledged with the note. Similarly, the notes themselves bear the indorsement: "This note secured with ten shares of Modern Motors, Inc. stock." Appellee asserts that this notation was placed on the notes after he had signed them. But in the face of his assertion, it appears that the notations were written on the same typewriter as

the body of the note, and in several instances the alignment of the type indicates very strongly that the notation must have been made without removing the instrument from the machine when the body of the note was written. There is likewise filed in evidence a letter written by appellee in June, 1931, to H. R. Moore, in which he refers to the fact that Bomar is pushing him for payment, and suggests that "no one here wishes to purchase the stock by itself, but if they could secure this and the $1500.00 that you or your wife owns they would be interested in purchasing the whole bunch together." He asserted no claim at that time to the effect that the fifteen-share certificate had been pledged. In addition, appellee, while asserting that the notes to Bomar had been altered and that the fifteen-share certificate had been surrendered by Bomar to appellant after it was pledged with him, made no effort to defend the suit by Bomar against him, although, if what he says is true, he must have had a good defense against Bomar's claim. Similarly, at the time the supposed pledge took place, it appears that Mr. and Mrs. Moore had already agreed to sell the stock to Spicer. It seems to us that the verdict is flagrantly against the evidence. Indeed, we are inclined to the view that a peremptory instruction for the defendant might have been proper. We cannot safely go to this extent, however, in view of the fact that the pleadings are not before us.

The only record now here presents the steps taken in the case after it was reversed and returned to the circuit court on the former appeal. It is the duty of counsel to see to it that the record on a former appeal is placed with the record on a subsequent appeal "when the record of the former appeal in the same cause is necessary to the decision of a subsequent appeal." Rule III, section 15, rules of the Court of Appeals. Upon our own investigation in the clerk's office, we find that the record on the former appeal was withdrawn by order of the circuit court and has not yet been returned. Obviously, in these circumstances, this court cannot and will not consider points not fully presented in the record here. There is enough for us to determine that the verdict on the second trial is flagrantly against the evidence. Other questions argued would require a re-examination of the pleadings, and we therefore do not consider them. They are reserved.

Judgment reversed.