## Louisville & N. R. Co. v. Wilson.

March 21, 1941.

Tye & Siler, H. C. Gillis, J. Miller White and H. T. Lively for appellant.

C. B. Upton and R. L. Pope for appellee.

Opinion of the Court by Judge Fulton—Reversing.

About one o'clock in the afternoon on December 7,

1937, the appellee, a man 24 years of age and totally deaf, was struck and injured by a coal train operated by appellant, while walking upon its track with his back to the approaching train in a remote and sparsely settled section of Whitley County. In an action to recover damages for injuries thus sustained verdict and judgment were for $3,500 and this appeal is prosecuted from that judgment.

The accident occurred near what is referred to in the evidence as Verne, which is merely a store and post-office in one building. The point of accident was approximately one-half mile from Verne. The nearest house to the point of injury was probably 250 yards and there are no houses along the railroad from that point to Verne. There were possibly six or eight houses within one-half mile of the point of accident. There is a water tank about one-half way between Verne and the place where appellee was struck. Witnesses variously estimated the water tank to be from 750 to 1,200 feet from the point of accident and, while the track from the water tank to the point of injury appears to be on what witnesses refer to as a slight curve, there is evidence that a man walking on the track at the point of accident could be seen from the water tank. A number of witnesses for appellee estimate the number of persons using the track as a pathway at the point where appellee was injured at from 50 to 100 each day and one witness, Samp Huddleson, stated that it was his guess that from 100 to 150 persons used the track during a twenty-four hour period.

The appellee testified that he had been walking down the track with his back to the approaching train from a point near the water tank without looking back to see if a train was approaching. He did not hear the train, of course, and knew nothing about the accident until he was struck and knocked into the ditch. No witness, except Emma Smith, professed to see the accident but two witnesses, Cynthia Douglas and Lou Smith, who were from one-fourth to one-half mile from the accident, testified that they heard distress signals from the engine whistle blowing sharply a number of times. They stated that in their judgment the distress signals were blown when the train was somewhere near the water tank. Lou Smith, when asked when the train stopped with reference to the time the distress signals were given, stated

that "it stopped and blew almost at the same time." Emma Smith lived about 75 yards back from the railroad track near the water tank but could not see the tank or railroad tracks at that point as there was a hill between her house and the tracks, which were in a cut at that point. She testified that she heard distress signals, which she thought were blown somewhere near the water tank, whereupon she went to her door and looked down the track. She could see neither the appellee nor the train at this time but while she was looking appellee emerged from the cut and walked a few steps. She then saw the train coming behind appellee and "the man" on her side of the train (presumably the fireman) was looking out the window—the train then struck appellee. She says she heard the brakes put on after the train struck appellee. The engine was stopped approximately 500 feet beyond the point of accident. There was no evidence as to the speed at which the train was traveling, although one or two witnesses said it was traveling slow, and no evidence was introduced to show in what distance it could have been brought to a stop with the means at hand. The appellant introduced no evidence but moved for a directed verdict at the conclusion of appellee's evidence.

The jury were instructed that if the track at the point in controversy was used by the public as a walkway in such large numbers that the presence of persons at the time of the accident might reasonably have been anticipated, it was the duty of appellant to exercise ordinary care to ascertain the presence of persons on the track and prevent injury to them. By a further instruction the usual issue as to liability to a trespasser was submitted. It is contended by appellant not only 1) that the evidence was insufficient to justify a submission on the question of its duty to anticipate the presence of persons on the track but 2) that there was a complete failure of the evidence to establish that it discovered appellee's peril in time to avoid injuring him by the exercise of ordinary care in the use of the means at its command consistent with the safety of the train and that therefore a verdict should have been directed for it.

The law as to the duty of a railroad company to anticipate the presence of persons on its tracks in sparsely settled rural communities has been enunciated so frequently by this court that no useful purpose would be

served by an extensive repetition. It suffices to say that the principles enunciated in Willis' Adm'x v. Louisville & N. R. Co., 164 Ky. 124, 175 S. W. 18; Sizemore's Adm'r v. Lexington & E. R. Co., 169 Ky. 497, 184 S. W. 383; Henson's Adm'r v. Hines, 193 Ky. 198, 235 S. W. 359; Howard v. Illinois C. R. Co., 189 Ky. 60, 224 S. W. 635 and Louisville & N. R. Co. v. Stidham's Adm'x, 194 Ky. 220, 238 S. W. 756, are controlling here and sustain appellant's first contention completely. In the Stidham case the facts are in legal effect identical with those in the present case. There, as here, the largest estimate of any witness as to the number of persons using the tracks each twenty-four hours was 150  Cases cited by counsel for appellee have no application since they deal with injuries occurring in incorporated cities or towns or in rural communities in which a far larger number of persons used the tracks than is shown to be the case here. We conclude that error was committed in submitting this issue to the jury and that the judgment must be reversed for this reason.

We deem it unnecessary to pass on appellant's second contention and determine whether or not a verdict should have been directed in its behalf since there is a probability that the evidence may be materially different on another trial. In passing we may point out, however, that though it be conceded, arguendo, that there was sufficient evidence to require a submission to the jury on the question of the discovery of appellee's peril, there was a complete failure to prove the distance within which the particular train involved could have been stopped at the point in controversy, considering the speed at which it was operated. Only in failure to stop, if in that, could appellant's trainmen have been guilty of failing to use ordinary care after the discovery of appellee's peril, if the evidence be deemed sufficient to justify a finding that his peril was discovered, since it clearly appeared that no amount of warning could have been heard by appellee.

Appellant contends also that instruction No. 4 was erroneous even though there was a properly submittable issue as to its liability to appellee as a trespasser. By this instruction the jury were told, in substance, that if they believed that appellee's peril was discovered it was the duty of the trainmen to use all reasonable means at their command to avoid striking him. The complaint is

that even though such an instruction was authorized, the duty of the trainmen should have been limited to the exercise of ordinary care in the use of all reasonable means at their command *consistent with the safety of the train* to avoid striking appellee. The qualification contended for was suggested as proper in Chesapeake & O. Ry. Co. v. Lang's Adm'x, 135 Ky. 76, 121 S. W. 993 and Louisville & N. R. Co. v. Horton, 187 Ky. 617, 219 S. W. 1084, yet we find that similar instructions without the qualifying language have been approved in other cases where this question was not raised. See Section 655 of Stanley's Instructions to Juries and cases cited in note (1) to this section. While we do not hold that a failure to insert the qualifying language was or was not reversible error, we may add that the insertion of it more clearly and fairly presents the law. Should there be another trial and should the evidence be sufficient to justify a submission to the jury, the instruction should be in substance as indicated in the closing paragraph of. Chesapeake & O. Ry. Co. v. McDonald, 239 Ky. 258, 39 S. W. (2d) 253, with the qualifying language inserted.

The judgment is reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.