## Cincinnati, N. O. & T. P. Ry. Co. v. King's Adm'x.

Dec. 15, 1942.

Tye & Siler, Bradley & Bradley and Carl M. Jacobs for appellant.

Pope & Upton, A. M. Caddell and J. C. Bird for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

This is the second appeal of this case. See Cincinnati, N. O. & T. P. Ry. Co. v. King's Adm'r, 284 Ky. 694, 145 S. W. (2d) 1053. Tun King was run over and killed by one of the appellant's double header freight trains about 6:30 a. m., Sunday, July 18, 1937. He was lying on a straight stretch of track more than a half mile from the outskirts of Pine Knot in a drunken condition at the time he met his death. The appellee introduced no eyewitnesses to the accident. We reversed the first judgment because of an erroneous instruction.

On the first trial the Company earnestly insisted that it was entitled to a peremptory instruction, but we reserved that question. That is the principal basis for the argument that the present judgment should be reversed.

On the former trial the testimony of the Company's witnesses showed that as the train came around a curve some 1,300 to 1,400 feet from the place where King's body was found an object was seen on the track. The fireman on the first engine testified that, when they were within 500 feet of the object, "I seen it was a man's leg drawing up in the track. He had one leg drawn up. I hallooed at the engineer it was a man and he shut the engine off, applied the brakes." The engineer testified that, while he saw a bulk of some kind, he did not know it was a man until after the train had passed over the

object, and "after they came back and told me." The engineer on the second engine testified that a train such as the one in question ought to have been stopped in 100 to 150 yards. There is no such evidence in the present record. The Company is standing on its motion for a directed verdict at the conclusion of the plaintiff's evidence.

The only evidence relating to the discovery of King's peril by those operating the train comes from two of the appellee's witnesses. Joe Smith said that he saw Engineer George Rowbottom a few minutes after the accident and that he said that he had killed Tun King and that he thought the object was a paper laying between the tracks when he came around, and it seemed like the air would wave it up and down a little and Smith testified also: "He said when he first seen the man laying there he might have stopped but he thought it was a paper, and if he stopped every time that he seen paper in the track he would never get over the road." Roy Stephens said that Rowbottom told him that he saw the man before he was run over. Assuming that the foregoing testimony constitutes a part of the res gestae, it is not shown when Rowbottom saw King, or at what distance the train was from him when the discovery was made. Furthermore, there is no evidence in the record of the second trial as to the speed of the train, or the distance required to stop a train such as the one involved. As said in the former opinion, King was a trespasser, and the only duty owed him by those operating the train was to exercise ordinary care to avoid injuring him after his peril was discovered.

It is obvious from what has been said that the evidence on the second trial falls far short of that developed on the first trial as to the discovery of King's peril by those operating the train. We are of the opinion that the evidence on the second trial was not sufficient to warrant the submission of the case to the jury on this question, though we may assume, for the sake of argument, that the evidence on the former trial was sufficient.

This brings us to the contention of counsel for the appellee that the evidence in the two records should be considered together, in view of Article 15 of Rule III of this Court. This Rule follows:

"Whenever there has been a prior appeal in any

cause in this Court, or whenever a record already in this Court is made part of a record in another cause but is not copied into the transcript, the Clerk of the Court shall place the old record with the new record before the cause is submitted. It shall be the duty of the attorney for appellant to notify the Clerk that the old record is to be placed with the new record, which notification shall be filed with the record, and upon said attorney's failure to give such notice, the appeal may be dismissed.''

But counsel are misconstruing the rule. It is the duty of counsel to see that the record on a former appeal is placed with the record on a subsequent appeal, when the record of the former appeal in the same cause is necessary to the decision of the subsequent appeal. Moore v. Pope, 273 Ky. 390, 116 S. W. (2d) 945. The record on the former appeal in the case at bar is not necessary to a decision on this appeal, though, as can be seen from what we have said heretofore, we have referred to the record in pointing out differences in the evidence on the two appeals. Each trial of a cause such as this is a separate and distinct one, the second one not being a continuation or prolongation of the first. The law of the case rule applies only to questions decided on the first appeal. As a practical matter, it might be said that verdicts rendered on subsequent trials of a cause would be meaningless if a court of review should consider all the evidence offered by the parties at all of the trials.

This leaves the contention of the appellee that those who operated the train were required to maintain a lookout duty at the place where King was killed. This contention ignores our well established rule that one, either sitting or lying upon a railroad track, is deemed to be a trespasser, regardless of location, and that those in charge of a train owed him no duty except to use ordinary care to protect him from injury after the discovery of his peril. Davis v. Crawford's Adm'x, 203 Ky. 71, 261 S. W. 835; Louisville & N. R. Co. v. Byrge's Adm'x, 273 Ky. 570, 117 S. W. (2d) 585. We may say in closing, however, that the evidence as to the use of the railway tracks as a passway by the public at the place where King was killed was insufficient to warrant the conclusion that those operating the train were required to maintain a lookout duty. Louisville & N. R. Co. v. Wilson, 285 Ky. 772, 149 S. W. (2d) 545; Louisville & N. R. Co. v. Arrowood's

Adm'r, 280 Ky. 658, 134 S. W. (2d) 224. The place where King was killed was a half mile or more from the outskirts of Pine Knot, an unincorporated village of some 500 inhabitants. There were only two or three houses within a radius of 200 or 300 yards of the point, and most of the testimony as to the frequency of the use of the track as a passway was general and indefinite. As pointed out, it did not measure up to the standards set forth in the two cases just cited.

It follows that it is our view that the judgment should be and it is reversed, with directions that it be set aside and for proceedings consistent with this opinion.

Whole Court sitting.